THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN VANCE, *et al.*,

Plaintiffs,

v.

MICROSOFT CORPORATION,

Defendant.

No. 2:20-cv-01082-JCC-MAT

**DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**NOTE ON MOTION CALENDAR**: OCTOBER 30, 2020

**ORAL ARGUMENT REQUESTED**

MICROSOFT'S REPLY IN SUPPORT OF MTD
(Case No. 2:20-cv-01082-JCC-MAT)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.       THE COURT SHOULD DISMISS PLAINTIFFS' BIPA CLAIMS. ............................. 2

     A.      The Court Should Dismiss Plaintiffs' BIPA Claims Because They Violate
Illinois's Extraterritoriality Doctrine. .................................................... 2

     B.      Plaintiffs' BIPA Claims Violate the Dormant Commerce Clause........................ 6

     C.      Plaintiffs Fail to State a Claim Under BIPA Sections 15(b) or 15(c). .................. 8

         1.      BIPA Does Not Apply to the Analysis of Photographs.............................. 8

         2.      Section 15(b) Does Not Apply to the Passive Possession of Data. ........... 9

         3.      Plaintiffs Fail to Plausibly Allege Microsoft "Profited" from Their
Biometrics and Thus Fail to Plead a Section 15(c) Claim. ...................... 10

CONCLUSION................................................................................................................ 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## <u>TABLE OF AUTHORITIES</u>

2
                                                                                      **Page(s)**

3
**Cases**

4
*Ades v. Omni Hotels Mgmt. Corp.*,
5
   46 F. Supp. 3d 999, 1012, 1014 (C.D. Cal. 2014) ...................................................................8

6
*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005) ........................................................................................................2

7
*Bryant v. Compass Group USA, Inc.*,
8
   958 F.3d 617 (7th Cir. 2020) ....................................................................................................3

9
*Chinatown Neighborhood Ass'n v. Harris*,
   794 F.3d 1136 (9th Cir. 2015) ..................................................................................................7

10

11
*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) ..................................................................................................12

12

13
*Cousineau v. Microsoft Corp.*,
   992 F. Supp. 2d 1116 (W.D. Wash. 2012)..............................................................................12

14
*Dana Tank Container, Inc. v. Human Rights Comm'n*,
   687 N.E.2d 102 (Ill. App. Ct. 1997) ........................................................................................9

15

16
*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)............................................................................................................11

17
*Figueroa v. Kronos*,
18
   454 F. Supp. 3d 772 (N.D. Ill. 2020) ..............................................................................9, 10

19
*Gravquick A/S v. Trimble Navigation Int'l. Ltd.*,
   323 F.3d 1219 (9th Cir. 2003) ..................................................................................................8

20

21
*Harbers v. Eddie Bauer, LLC*,
   415 F. Supp. 3d 999, 1007 ......................................................................................................11

22
*Healy v. Beer Inst., Inc.*,
23
   491 U.S. 324 (1989)..............................................................................................................1, 7

24
*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960, 966 (N.D. Ill. 2020) .............................................................................10

25

26
*Int'l Equip. Trading, Ltd. v. Illumina, Inc.*,
   312 F. Supp. 3d 725, 732–34 (N.D. Ill. 2018) ........................................................................4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Inventus Power, Inc. v. Shenzhen Ace Battery Co.*,
   No. 20-cv-3375, 2020 WL 3960451 (N.D. Ill. July 13, 2020) ...................................................4

*Kelley v. Microsoft Corp.*,
   251 F.R.D. 544 (W.D. Wash. 2008) .........................................................................................12

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ...................................................................................................12

*Monroy v. Shutterfly, Inc.*,
   No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. 2017)...................................................5, 8, 9

*Norberg v. Shutterfly, Inc.*,
   152 F. Supp. 3d 1103 (N.D. Ill. 2015) .......................................................................................9

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) .............................................................................................5, 6

*Rainero v. Archon Corp.*,
   844 F.3d 832 (9th Cir. 2016) ...................................................................................................11

*Rasmusson v. Chicago County*,
   991 F. Supp. 2d 1065 (D. Minn. 2014) ......................................................................................9

*Rivera v. Google, Inc.*,
   238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) .....................................................................2, 5, 8

*Sam Francis Foundation v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) .............................................................................................1, 6

*Shaw v. Hyatt Int'l Corp.*,
   No. 05 C 5022, 2005 WL 3088438 (N.D. Ill. Nov. 15, 2005)...................................................5

*Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*,
   708 F.3d 1109 (9th Cir. 2013) ...................................................................................................11

*South Dakota v. Wayfair, Inc.*,
   138 S. Ct. 2080 (2018)................................................................................................................7

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ...................................................................................................4

*Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*,
   No. 11-cv-8894, 2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) ...................................................2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Vance v. IBM*,
  No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020).................................5, 8

*Vulcan Golf, LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) .......................................................................3

*Walker v. S.W.I.F.T. SCRL*,
  491 F. Supp. 2d 781 (N.D. Ill. 2007) .......................................................................3

*Wooley v. Bridgeview Bank Mortg. Co.*,
  No. 14 C 5757, 2015 WL 327357 (N.D. Ill. Jan. 23, 2015) ......................................4

**Statutes**

740 ILCS 14/10.............................................................................................................8

740 ILCS 14/15.........................................................................................................9, 10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................5

MICROSOFT'S REPLY IN SUPPORT OF MTD - iv
(Case No. 2:20-cv-01082-JCC-MAT)

**INTRODUCTION**

In violation of both Illinois law and the Constitution, Plaintiffs seek to apply Illinois's BIPA to activity they do not allege occurred in Illinois. Further, their claims would stretch the statute well beyond its plain meaning. This Court should reject Plaintiffs' attempt to expand BIPA both territorially and substantively, and grant Microsoft's motion to dismiss.

*Extraterritoriality*. Although they concede BIPA applies only to conduct occurring primarily and substantially in Illinois, Plaintiffs do not allege Microsoft engaged in a single liability-causing act in Illinois. Plaintiffs allege only that (1) Illinois Flickr users (including Plaintiffs) posted their photos online; (2) California-based Yahoo! compiled those Flickr photos in a publicly-available online database (which Plaintiffs admit did not violate BIPA); (3) New York-based IBM researchers downloaded and analyzed the faces in *some* of those photos to create the DiF Dataset; and (4) Washington-based Microsoft later downloaded the IBM DiF Dataset from Washington. But the act of downloading photos from the Internet while in Washington does not amount to conduct in Illinois—even if someone in Illinois allegedly chose to upload the photos to Flickr a decade ago. Nor do Plaintiffs allege any interaction or relationship between Flickr and Microsoft. Instead, Plaintiffs assert IBM created the DiF Dataset using the Flickr Dataset, and Microsoft "applied for and obtained" the DiF Dataset from IBM. This extended chain of alleged events, all undisputedly out-of-state, cannot give rise to a BIPA claim as a matter of law.

*Commerce Clause*. It also cannot give rise to a BIPA claim as a matter of constitutional law. The dormant Commerce Clause prohibits application of state statutes when "the practical effect of the regulation [would be] to control conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Plaintiffs argue dismissing BIPA claims on the pleadings is premature, but they point to no allegations of any substantial conduct by Microsoft in Illinois. Plaintiffs' own allegations confirm this case falls squarely within *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1322, 1326 (9th

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Cir. 2015) (*en banc*), in which the Ninth Circuit affirmed dismissal on dormant Commerce Clause grounds of claims under a California statute that, like BIPA, purported to regulate out-of-state transactions.  This Court should hold similarly here.

*Photograph Exemption*.  By its terms, BIPA does not apply to scans of photos of faces.  The statute's plain language excludes both photos and information derived from them.  Although some courts have held otherwise, those non-binding cases were wrongly decided, and the Court need not and should not follow them.

*Passive Possession and Absence of Profit*.  Plaintiffs fail to state a claim under Sections 15(b) or (c) of BIPA.  Those provisions do not apply to the passive possession of biometric identifiers or information, which is all Plaintiffs allege.  Further, Plaintiffs fail to allege plausibly that Microsoft "profited" from their biometric identifiers or information.

*Unjust Enrichment*.  Washington, not Illinois law, applies to Plaintiffs' tag-along unjust enrichment claim.  And that claim fails because Plaintiffs have not alleged they incurred any economic loss caused by Microsoft.  Even if Illinois law applied, this claim would still fail because unjust enrichment cannot be brought as a standalone claim.

## ARGUMENT

I.      THE COURT SHOULD DISMISS PLAINTIFFS' BIPA CLAIMS.

   A.      The Court Should Dismiss Plaintiffs' BIPA Claims Because They Violate Illinois's Extraterritoriality Doctrine.

Plaintiffs do not (and cannot) contest that, under settled Illinois law, BIPA applies only to conduct that occurs "primarily and substantially" in Illinois.  *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005); *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) (BIPA "does not have extraterritorial application"; Illinois-resident plaintiffs' "asserted [BIPA] violations ... must have taken place in Illinois for them to win").  Further, case after case holds that a plaintiff's Illinois residence does not provide a sufficient Illinois connection to avoid dismissal based on extraterritoriality.  *See, e.g.*, *Super*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   *Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, No. 11-cv-8894, 2013 WL 1337303,

2   at *7 (N.D. Ill. Mar. 29, 2013) (no substantial connection where plaintiff was an Illinois

3   business); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008)

4   (dismissing case when only contact was plaintiffs' Illinois residence); *Walker v. S.W.I.F.T.*

5   *SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (same, further relying on lack of defendant's

6   connections to or transactions in Illinois).  Here, as in those cases, Plaintiffs have nothing

7   more than their own residence to support an Illinois connection—and that alone cannot

8   support applying BIPA to a non-Illinois company based on its alleged conduct outside

9   Illinois.

10         In arguing to the contrary, Plaintiffs cite four "factors" as showing "the relevant

11   circumstances ... occurred primarily and substantially in Illinois."  Opp. at 5–6.  But three of

12   those factors boil down to nothing more than their Illinois residency.  *Id*. at 6 ("Plaintiffs

13   resided in Illinois"); *id.* (contending Microsoft "fail[ed] to disclose" in Illinois because

14   Plaintiffs reside there); *id.* (contending Plaintiffs were injured in Illinois because they reside

15   there).[1]  Because residency, by itself, cannot provide the requisite link to Illinois, reframing

16   residency in three different ways fares no better.

17         That leaves only Plaintiffs' fourth "factor," i.e., their conclusory catch-all allegation

18   concerning Microsoft activities in Illinois, which likewise falls short.  In particular, while

19   Plaintiffs vaguely allege Microsoft does ***something*** in Illinois, none of the alleged acts

20   supports a plausible connection between Microsoft's alleged activities in Illinois and the IBM

21   DiF Dataset—the only data at issue—or any liability-causing acts under BIPA.  *See* Compl.

22   ¶ 59 (alleging Microsoft "(i) sell[s] facial recognition products to third-party clients through

23   an Illinois-based vendor; (ii) work[s] . . . with an Illinois-based business to build new

---

24

25   [1] Plaintiffs cite *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020), to argue
    that "Plaintiffs' injuries occurred in Illinois," Opp. at 6, but *Bryant* involved the narrow

26   question whether plaintiffs had Article III standing to pursue BIPA Section 15(a) and (b)
    claims in federal court.  It had nothing to do with extraterritoriality.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

applications for its facial recognition technology; and (iii) work[s] with the University of Illinois … to build and promote a 'digital transformation institute' aimed at 'accelerating the application of artificial intelligence'").  Plaintiffs' only specific allegation refers to Microsoft's work with the University of Illinois—but that did ***not*** involve facial-recognition technology at all.  Instead, it involves the use of AI to mitigate COVID-19's spread and therefore clearly falls outside BIPA.  Mot. at 8.  And while Plaintiffs complain Microsoft looked "outside the Complaint" to establish the patent inaccuracy of their assertion, Microsoft relied only on an article ***Plaintiffs*** quoted in Paragraph 59 of the Complaint—which controls over any contradictory allegation.  *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir. 1998) (court on motion to dismiss is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

In short, Plaintiffs have alleged no relevant connection between Microsoft's alleged conduct underlying Plaintiffs' BIPA claims and Illinois.  Because Plaintiffs improperly seek to apply BIPA extraterritorially, the Court should dismiss their BIPA claims with prejudice.

Faced with the inadequacy of their pleading, Plaintiffs argue that dismissal would be "premature."  Opp. at 4.  But courts ***consistently*** grant motions to dismiss based on Illinois's extraterritoriality doctrine where, as here, a complaint fails to allege a substantial connection to the state.  *See, e.g.*, *Inventus Power, Inc. v. Shenzhen Ace Battery Co*., No. 20-cv-3375, 2020 WL 3960451, at *7–8 (N.D. Ill. July 13, 2020) (alleged acts constituting trade secret misappropriation occurred outside Illinois and likely outside reach of Illinois law, even when one plaintiff based in Illinois); *Int'l Equip. Trading, Ltd. v. Illumina, Inc.,* 312 F. Supp. 3d 725, 732–34 (N.D. Ill. 2018) (dismissing Illinois deceptive practices claim when plaintiff's "ties to Illinois do not sufficiently establish the requisite connection to Illinois when the allegedly illegal actions of a California-based company") (citing cases); *Wooley v. Bridgeview Bank Mortg. Co.,* No. 14 C 5757, 2015 WL 327357, at *3 (N.D. Ill. Jan. 23, 2015) ("[B]ecause nearly every circumstance leading to the [p]laintiffs' alleged injuries occurred in

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Kansas, the [Illinois minimum wage law] provides no avenue for relief.")  It makes no difference that some complaints in other cases (unlike the one at issue here) adequately plead Illinois connections.

For example, Plaintiffs rely on the recent denial of a motion to dismiss in *Vance v. IBM*, No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020), to argue the Court cannot decide extraterritoriality on such a motion.  Plaintiffs exaggerate the holding in *IBM*.  Opp. at 4.  It is true the court suggested Rule 12(b)(6) dismissal on extraterritorial grounds may be "generally inappropriate."  But neither case it cited for this proposition supports it; instead, both courts denied motions to dismiss after evaluating the specific allegations plaintiffs pleaded showing sufficient Illinois connections.  *See Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *6 (N.D. Ill. 2017) (evaluating whether conduct at issue was "alleged to have occurred in Illinois"); *Rivera*, 238 F. Supp. 3d at 1101–02 (concluding "[p]laintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois").  Indeed, the court in *Rivera* cited with approval *Shaw v. Hyatt Int'l Corp.*, No. 05 C 5022, 2005 WL 3088438, at *2–3 (N.D. Ill. Nov. 15, 2005), in which the court granted a motion to dismiss on extraterritoriality grounds because Illinois "connections [were] too tenuous."  Unlike in *Monroy* and *Rivera*, Plaintiffs here, allege no specific facts connecting Microsoft's supposed BIPA-related conduct to Illinois.

Moreover, the *IBM* court denied the motion to dismiss because it determined "discovery is needed in order to determine to what extent IBM's alleged acts occurred in Illinois."  2020 WL 5530134, at *7.  But Plaintiffs here do not dispute that Microsoft's alleged conduct occurred outside of Illinois; they dispute only whether their residence in Illinois suffices as a matter of law.  Under settled law, it does not.

Plaintiffs likewise incorrectly characterize *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019).  There, Illinois-based Facebook users uploaded their photos directly to Facebook from Illinois, leading the court to hold extraterritoriality issues did not preclude class

MICROSOFT'S REPLY IN SUPPORT OF MTD - 5
(Case No. 2:20-cv-01082-JCC-MAT)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

certification.  At the same time, the Court acknowledged "if future decisions or circumstances lead to the conclusion that extraterritoriality must be evaluated on an individual basis, the district court can decertify the class."  *Id.* at 1276.  Plaintiffs argue the direct relationship between plaintiffs and Facebook was "meaningless" to the Court's extraterritoriality analysis. Opp. at 5.  But the Facebook feature at issue in *Patel* worked *only* for Facebook users.  Thus, the Illinois plaintiffs in *Patel* were admittedly Facebook users, with a direct relationship with the defendant, centered in Illinois.  Plaintiffs allege no such relationship with Microsoft.

Plaintiffs here fail to allege *any* connection between Microsoft's purported liability-causing conduct and Illinois.  Plaintiffs' own allegations thus provide no plausible basis for applying BIPA to Microsoft's conduct.  The Court should dismiss the BIPA claims.

**B.      Plaintiffs' BIPA Claims Violate the Dormant Commerce Clause.**

In short, Plaintiffs invoke BIPA to regulate a transaction occurring entirely outside Illinois, i.e., Microsoft's alleged Internet download from Washington of New York-based IBM's DiF database, which allegedly happens to include some images of Illinois residents. But the Ninth Circuit has made clear the Constitution forbids that effort: Illinois cannot regulate the exchange of data between two non-Illinois entities (IBM and Microsoft) simply because some of the data purportedly relates to Illinois residents.  *See Sam Francis Found.*, 784 F.3d at 1322, 1326 (affirming granting of motion to dismiss under dormant Commerce Clause).

Unable to respond to *Christies*, Plaintiffs mischaracterize it, suggesting the decision turned on the fact the California statute there "did not seek to protect California victims." Opp. at 12.  In fact, the *en banc* majority in *Christies* did not even discuss the scope of the statutory protection (much less refer to "California victims"); instead, it relied on the fact the transactions at issue, like the transaction here, took "place outside California" and had "*no necessary connection with the state other than the residency of the seller*."  *Sam Francis Found.*, 784 F.3d at 1323–24 (emphasis added).  And the Court in *Christies* expressly relied

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

on the Supreme Court's decision in *Healy*, 491 U.S. at 336, holding the dormant Commerce Clause "precludes the application of a state statute" that has "the practical effect of ... control[ling] conduct beyond the boundaries of the State," "whether or not the commerce has effects within the State." *Sam Francis Found.*, 784 F.3d at 1323–24. Plaintiffs are thus incorrect when they tell the Court that *Healy* is "limited to price-affirmation statutes." *See* Opp. at 11.

Rather than respond to Microsoft's argument, Plaintiffs allude to the so-called "*Pike* test"—which examines a statute's "indirect effect on interstate commerce"—and claim Microsoft "waived" the argument "by not addressing it in its motion." *Id*. at 8, 11. But the Court need not consider the *Pike* test when, as here, a statute ***directly regulates*** interstate commerce without the requisite nexus to the regulating state. *See id*. at 8. In those instances, as here, courts dismiss the claims ***without additional inquiry***, making balancing unnecessary. *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145–46 (9th Cir. 2015).

Plaintiffs seek to avoid the merits of Microsoft's argument by inviting the Court to re-write the Commerce Clause, suggesting "that given the social and economic changes of the 'Cyber Age,' it is no longer appropriate to use the dormant Commerce Clause to 'limit[] the lawful prerogatives of the States' by requiring that regulated entities have a physical presence in the state." Opp. at 7 (quoting *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080, 2097 (2018)). But *Wayfair* has no bearing here. The Supreme Court there overturned precedent holding that, under the dormant Commerce Clause, a state "may not require a business that has no physical presence in the State to collect its sales tax." The Court concluded online retailers with no physical presence or employees in a state ***could*** be required to collect and remit sales tax—but only for sales of products or services ***within the state***. *Id.* at 2084.

Finally, Plaintiffs fundamentally misunderstand constitutional principles when they argue "the existence of two state statutes that regulate biometric data does not offend the dormant Commerce Clause." Opp. at 12. Although multiple states can regulate biometric

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   data, no state may regulate conduct outside its borders.  Plaintiffs do not cite *any* authority

2   supporting application of an Illinois statute to alleged out-of-state conduct by an out-of-state

3   company without an alleged connection to Illinois.  Instead, Plaintiffs rely on cases involving

4   a direct relationship between the out-of-state party and an in-state party.  *See, e.g.*, *Ades v.*

5   *Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1012, 1014 (C.D. Cal. 2014) (no dormant

6   Commerce Clause violation because California law at issue "applies to [defendant's]

7   telephone conversations *with Californians*") (emphasis added); *Gravquick A/S v. Trimble*

8   *Navigation Int'l. Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003) (no dormant Commerce Clause

9   violation because *by contracting with parties located in California*, dealers consented to

10   being governed by its law).

11        The Court should dismiss the BIPA claims under the dormant Commerce Clause.

12   **C.     Plaintiffs Fail to State a Claim Under BIPA Sections 15(b) or 15(c).**

13        **1.     BIPA Does Not Apply to the Analysis of Photographs.**

14        BIPA's plain language expressly excludes both photographs and "information derived

15   from" photographs—such as the facial measurements IBM allegedly took from photos

16   Plaintiffs voluntarily posted online.  *See* Mot. at 16–19.  Plaintiffs do not argue otherwise.

17   Nor could they given the statute, which unequivocally states:  "Biometric identifiers do not

18   include … photographs," and "[b]iometric information does not include information derived

19   from items … excluded under the definition of biometric identifiers."  740 ILCS 14/10.

20        Plaintiffs respond only by pointing to *Rivera*, *Monroy*, and *IBM* (which incorporated

21   *Rivera*'s analysis), but those courts examined the issue based on different allegations.  Opp. at

22   14–17.  And this Court need not defer to these non-binding decisions, each of which failed to

23   follow BIPA's plain language.

24        Contrary to Plaintiffs' suggestion, Microsoft's common-sense reading of BIPA's

25   "photograph" exemption would *not* make BIPA "self-defeating," *id.*, as BIPA affects

26   regulation of information actually covered by BIPA (e.g., iris scans, fingerprints, and scans of

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

facial geometry not obtained from photos).  Nor would it adversely affect the privacy interests

BIPA protects, as Plaintiffs claim.  *Id.*  Microsoft allegedly downloaded Plaintiffs' photos

within the IBM DiF Dataset only because they chose to post their photos on Flickr, a public

photo-sharing website.  IBM only used Flickr photos wherein their owners (such as Plaintiffs)

previously agreed to the broadest Creative Commons copyright license, which placed no

privacy restrictions on their use.  *See* Michele Merler, *et al., Diversity in Faces,* IBM

Research AI (Apr. 10, 2019), p. 8 (Compl. ¶ 23); s*ee e.g.*, *Rasmusson v. Chicago County*, 991

F. Supp. 2d 1065, 1078–79 (D. Minn. 2014) (dismissing privacy claims based on driver's

license information, including photo).

BIPA expressly excludes photographs and "information derived from" photographs.

### 2.    Section 15(b) Does Not Apply to the Passive Possession of Data.

Microsoft's Motion also explained that unlike BIPA Sections 15(a), (c), (d), and (e)—

which are triggered through passive "possession"—only ***affirmative acts*** trigger Section

15(b), i.e., the private entity must "collect, capture, purchase, receive through trade," or

"obtain" biometric information.  740 ILCS 14/15.  Section 15(b) thus imposes no

requirements on entities that merely "possess[]" biometric information, but only on entities

who actively "collect" it.  *See Dana Tank Container, Inc. v. Human Rights Comm'n*, 687

N.E.2d 102, 104 (Ill. App. Ct. 1997) ("Where the legislature uses certain words in one

instance and different words in another, it intended different results.").

Ignoring BIPA's plain language and relying on *Figueroa v. Kronos*, 454 F. Supp. 3d

772 (N.D. Ill. 2020), Plaintiffs assert Section 15(b) "does not require a private entity to

'actively collect' a person's Biometric Data."  Opp. at 18.[2]  Plaintiffs claim *Figueroa*

"rejected" the distinction between "active" collection and passive possession, arguing

---

[2] Plaintiffs' reliance on *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015), and *Monroy* also is misplaced because neither case analyzed BIPA Section 15(b) in relation to claims brought under other BIPA subsections.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

MICROSOFT'S REPLY IN SUPPORT OF MTD - 9
(Case No. 2:20-cv-01082-JCC-MAT)

"Sections 15(a), (c), (d), and (e)…apply to entities regardless of whether they obtained Biometric Data before or after BIPA's effective date, while Section 15(b) imposes obligations on entities that came into possession of such data *after* BIPA's effective date." Opp. at 18–19 (citation omitted).  But *Figueroa* ignores the legislature's deliberate use of different verbs in Section 15(b) compared to Sections 15(a) and (c)-(e), and ignores that nothing in Section 15 indicates that BIPA's effective date has any bearing on the conduct regulated.  Had the legislature meant for Section 15(b) to "impose[] obligations on entities that came into possession of such data *after* BIPA's effective date," it would have said so.  But it did not. Thus, "for Section 15(b)'s requirements to apply, an entity must, at a minimum, take an active step to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020) (citation omitted).  Plaintiffs allege no such facts here.

Finally, Plaintiffs speculate that Microsoft "could have complied with BIPA's notice and consent requirements before obtaining Plaintiffs' … Biometric Data" by "ask[ing] IBM to initially provide it with the metadata for all photographs in the Dataset, as well as the contact information/Flickr user information for all individuals therein," or "ask[ing] IBM to initially provide a version of the Dataset without the Biometric Data, and then used the information therein to provide the requisite notice and obtain the requisite consent."  Opp. at 20.  But no allegation in the Complaint supports these implausible assertions.  As Microsoft explained, it could not have obtained Plaintiffs' consent before allegedly obtaining their photos given it did not collect, capture, purchase, receive, or obtain those photos from Plaintiffs.

### 3. Plaintiffs Fail to Plausibly Allege Microsoft "Profited" from Their Biometrics and Thus Fail to Plead a Section 15(c) Claim.

Plaintiffs' BIPA Section 15(c) claim—based on Microsoft allegedly "profiting" from their biometrics by using the IBM DiF Database to improve its facial-recognition technology, *see* Compl. ¶ 58—rests on a mischaracterization of the term "otherwise profit."  740 ILCS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

14/15(c).  Section 15(c) states, in full:  "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."  Microsoft showed the language "otherwise profit from" requires the receipt of a pecuniary benefit in exchange for a person's biometric data because it is part of a list of verbs—"sell, lease, trade"—that each requires a direct exchange for consideration.  *See* Mot. at 21–22.

In response, Plaintiffs suggest the Court should read "otherwise profit from" in isolation because "sell, lease, trade" are verbs and not "persons or things."  Opp. at 22.  But no case supports that distinction.  *See Rainero v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016) ("[W]hen deciding whether the language is plain, [courts] must read the words 'in their context and with a view to their place in the overall statutory scheme'").  Under settled principles of statutory interpretation, where "a more general term follows more specific terms in a list, the general term is usually understood to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018).  This principle holds as true for verbs as it does for "persons or things."  *Id.* (applying principle to verbs in a statute).  Here, "otherwise profit" appears in a list of similar verbs—"sell, lease, trade"—evincing a legislative intent that "otherwise profit" means other forms of exchanges for money.  BIPA's legislative history supports this reading, as that history shows the legislature intended for Section 15(c) to "prohibit[] the ***sale*** of biometric information."  IL H.R. Tran. 2008 Reg. Sess. No. 276 at 112 (emphasis added) (attached as **Exhibit A**).[3]

## II.     THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM.

Without analysis, Plaintiffs assert Illinois law applies and argue they "have stated a

---

[3] The Court may take judicial notice of the legislative history attached as **Exhibit A**.  *See, e.g.*, *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1120 n.8 (9th Cir. 2013) (granting motion to take judicial notice of legislative history); *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1007 n.5 (W.D. Wash. 2019) ("Information published on government websites, including legislative history, is a proper subject of judicial notice.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

claim for unjust enrichment under Illinois law." Opp. at 23.  Under governing choice-of-law principles, however, Washington law applies, and Plaintiffs have stated no claim.

To determine the applicable law, "[a] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).  Washington employs a two-step approach to choice-of-law questions: (1) the Court first determines whether an actual conflict between Washington and other applicable state laws exists—and "[i]n the absence of a conflict, Washington law applies"; and (2) "[i]f an actual conflict exists, the Court must determine the forum or fora that have the 'most significant relationship' to the action to determine the applicable law." *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D. Wash. 2008) (internal citations omitted).  Plaintiffs assert no conflict between Washington and Illinois law.  Opp. at 23.  Thus, under step one of the analysis, Washington law applies.

Plaintiffs' unjust enrichment claim fails under Washington law because they have not alleged they incurred any tangible economic loss—which this Court has required at the pleading stage.  *See Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (Coughenour, J.).  And even if Illinois law applied, the claim would still fail because it "rests on the same improper conduct alleged in another claim"—i.e., Plaintiffs' BIPA claims—and therefore the claim "stand[s] or fall[s] with the related [BIPA] claim[s]." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

Courts —like this Court in *Cousineau*—regularly dismiss unjust enrichment claims on motions to dismiss.  Plaintiffs' request to assert unjust enrichment as an alternative to the BIPA claims, Opp. at 24, does not save them: they fail to allege economic loss (Washington law) and cannot assert unjust enrichment as a stand-alone claim (Illinois law).

## **CONCLUSION**

Microsoft respectfully requests the Court dismiss the Complaint with prejudice.[4]

---

[4] Plaintiffs concede the Court should dismiss their injunctive relief claim (Count IV).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 26th day of October, 2020.

2
                                    DAVIS WRIGHT TREMAINE LLP
3                                   Attorneys for Defendant Microsoft Corporation

4
                                    By /s/ Stephen M. Rummage
5                                        Stephen M. Rummage, WSBA #11168
                                         Xiang Li, WSBA #52306
6                                        920 Fifth Avenue, Suite 3300
                                         Seattle, WA  98104-1610
7                                        Telephone: (206) 757-8136
                                         Fax: (206) 757-7136
8                                        E-mail: steverummage@dwt.com
                                                 xiangli@dwt.com
9
                                    MORGAN LEWIS & BOCKIUS
10                                  Attorneys for Defendant Microsoft Corporation

11
                                    By /s/ Elizabeth B. Herrington
12                                       Elizabeth B. Herrington (pro hac vice)
                                         Tyler Zmick (pro hac vice)
13                                       77 West Wacker Drive, Suite 500
                                         Chicago, IL 60601-5094
14                                       Telephone: (312) 324-1188
                                         E-mail:  beth.herrington@morganlewis.com
15                                                tyler.zmick@morganlewis.com

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT'S REPLY IN SUPPORT OF MTD - 13
(Case No. 2:20-cv-01082-JCC-MAT)

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 26, 2020, I caused to be electronically filed the foregoing DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

DATED October 26, 2020

By */s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
E-mail: steverummage@dwt.com

MICROSOFT'S REPLY IN SUPPORT OF MTD - 14
(Case No. 2:20-cv-01082-JCC-MAT)

# EXHIBIT A

Case 2:20-cv-01082-JLR   Document 34   Filed 10/26/20   Page 21 of 23

Illinois House Transcript, 2008 Reg. Sess. No. 276, Illinois House Transcript, 2008 Reg....

IL H.R. Tran. 2008 Reg. Sess. No. 276

House Transcript, 95th General Assembly, Regular Session, 276th Legislative Day

May 30, 2008
Illinois House of Representatives
95th General Assembly, 2008 Regular Session

Speaker Lyons: "Good morning, Illinois. The Illinois House of Representatives will come to order. Members are asked to please be at their desks. We shall be led in prayer today by Lee Crawford, the pastor of the Cathedral of Praise Christian Center in Springfield. Members and our guests are asked to refrain from starting their laptops and to turn off all cell phones and pagers and rise for the invocation and for the Pledge of Allegiance. Lee Crawford."

Pastor Crawford: "Let us pray. Most gracious and most sovereign God, who art the giver and sustainer of our lives. We pray this day that You would bestow Your most choice blessings upon this House of Representatives. Father, I pray that You would grant them wisdom, that You would grant them strength to do what You have called them to do. I pray that this day during these most challenging and even intense times that they will not lean toward their own understanding, but Father, rather they will lean and depend upon You. Father, I pray this day for spirit of compromise. I pray for spirit of unity. I pray for spirit of commitment, commitment to do what is good and what is fair and what is just in Your sight and in what is the best interest of this great State of Illinois. We ask this in Your Son's name. Amen."

Speaker Lyons: "We'll be led in the Pledge of Allegiance by Representative Tom Holbrook."

Holbrook - et al: "I pledge allegiance to the flag of the United States of America and to the republic for which it stands, one nation under God, indivisible, with liberty and justice for all."

Speaker Lyons: "Roll Call for Attendance. Representative Lang. Representative Lang, Democrats. Oh, Representative Currie."

Lang: "Representative Currie's here with the list."

Speaker Lyons: "Representative Currie. Representative Currie on the Democrats."

Currie: "Thank you, Speaker. Please let the record reflect that Representatives Brosnahan, Will Davis, and Osterman are excused today."

Speaker Lyons: "Thank you, Leader. Michael Bost, GOP."

Bost: "Thank you, Mr. Speaker. Let the record reflect that Representative Watson is excused on the Republican side of the aisle today."

Speaker Lyons: "Thank you, Representative. Mr. Clerk, take the record. We have 113 Members answering the Roll Call, a quorum is present. Mr. Clerk, Committee Reports."

Clerk Mahoney: "Committee Reports. Representative Molaro, Chairperson from the Committee on Judiciary II-Criminal Law, to which the following measure/s was/were referred, action taken on May 30, 2008, reported the same back with the following recommendation/s: 'recommends be adopted' is Floor Amendment #1 to House Bill 2424, Floor Amendment #1 to House Bill 2750; a Motion to Concur with Senate Amendment #1 to House Bill 2859. Representative Holbrook, Chairperson from the Committee on Environment & Energy, to which the following measure/s was/were referred, action taken on May 30, 2008, reported the same back with the following recommendation/s: 'do pass Short Debate' is Senate Bill 836; 'recommends be adopted' is Floor Amendment #4 to Senate Bill 526. Representative Collins,

Berrios: "Thank you, Mr. Speaker. Floor Amendment #1 adds the language of House Bill 5469 to the Senate Bill."

Speaker Lyons: "Is there any discussion on the Amendment? Seeing none, all those in favor of its adoption signify by saying 'yes'; those opposed say 'no'. In the opinion of the Chair, the 'ayes' have it. And the Amendment is adopted. Anything further, Mr. Clerk?"

Clerk Bolin: "No further Amendments. No Motions filed."

Speaker Lyons: "Third Reading. Read the Bill, Mr. Clerk."

Clerk Bolin: "Senate Bill 2349, a Bill for an Act concerning criminal law, which may be referred to as the Child Protection Act of 2008. Third Reading of this Senate Bill."

Speaker Lyons: "The Chair recognizes the Lady from Cook, Representative Toni Berrios."

Berrios: "Thank you, Mr. Speaker, Ladies and Gentlemen of the House. Senate Bill 2349 creates the Child Protection Act of 2008. This Bill was previously passed in the House under House Bill 5687. It's the exact same language. And what it does is it prohibits sex offenders' contact with minors using electronic communications such as the Internet. And now with the Amendment, which was House Bill 5469, we are just making sure that child predators do not use the Internet."

Speaker Lyons: "Is there anyone dis... seeking to question the Sponsor? Seeing none, the question is, 'Should Senate Bill 2349 pass?' All those in favor signify by saying 'yes'; those... All those in favor of the Bill should vote 'yes'; all those opposed vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Have all voted who wish? Mr. Clerk, take the record. On this Bill, there's 113 Members voting 'yes', 0 voting 'no'. This Bill, having received the Constitutional Majority, is hereby declared passed. Representative Kathy Ryg, you have Senate Bill 2400. What's the status of that Bill, Mr. Clerk?"

Clerk Bolin: "Senate Bill 2400, the Bill's been read a second time, previously. Amendment #1 was adopted in committee. Floor Amendment #2, offered by Representative Ryg, has been approved for consideration."

Speaker Lyons: "Representative Ryg on the Floor Amendment."

Ryg: "Thank you, Mr. Speaker. The Floor Amendment guts and replaces to become the Bill. It provides for a technical correction and removes the Home Rule preemption because the Bill no longer applies to public agencies."

Speaker Lyons: "There any discussion on the Amendment? Seeing none, all those in favor signify by saying 'yes'; those opposed say 'no'. In the opinion of the Chair, the 'ayes' have it. And the Amendment is adopted. Anything further, Mr. Clerk?"

Clerk Bolin: "No further Amendments. No Motions filed."

Speaker Lyons: "Third Reading. And read the Bill, Mr. Clerk."

Clerk Bolin: "Senate Bill 2400, a Bill for an Act concerning health. Third Reading of this Senate Bill."

Speaker Lyons: "The Chair recognizes the Lady from Lake, Representative Kathy Ryg."

Ryg: "Thank you, Mr. Speaker, Ladies and Gentlemen of the House. Senate Bill 2400 creates the Biometric Information Privacy Act which will be applicable to private entities doing business in Illinois. It sets collection and retention standards while prohibiting the sale of biometric information. It provides exemptions as necessary for hospitals, organ donation efforts, licensed fingerprint vendors working with State Police doing background checks and private subcontractors working for a state or a local unit of government and banks that are covered under Federal Law. State and local government use of biometrics will be covered through the establishment of a study committee with key government

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

stakeholders to review current policies and practices and make recommendations for improvement by January 2009. This Bill is especially important because one of the companies that has been piloted in Illinois, Pay By Touch, is the largest fingerprint scan system in Illinois and they have recently filed for bankruptcy and wholly stopped providing verification services in March of 2008. This pullout leaves thousands of customers from Albertson's, Cub Foods, Farm Fresh, Jewel Osco, Shell, and Sunflower Market wondering what will become of their biometric and financial data. The California Bankruptcy Court recently approved the sale of their Pay By Touch database. So, we are in very serious need of protections for the citizens of Illinois when it comes to biometric information. I know of no opposition to the legislation and I'll attempt to answer any questions."

Speaker Lyons: "Is there any discussion? Seeing none, the question is, 'Should Senate Bill 2400 pass?' All those in favor signify by voting 'yes'; those opposed vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Have all voted who wish? Mr. Clerk, take the record. On this Bill, there are 113 Members voting 'yes', 0 voting 'no'. This Bill, having received the Constitutional Majority, is hereby declared passed. Representative Bill Black, you have Senate Bill 2413. What's the status of that Bill, Mr. Clerk?"

Clerk Bolin: "Senate Bill 2413, the Bill has been read a second time, previously. Amendment #1 was adopted in committee. No Floor Amendments. No Motions are filed."

Speaker Lyons: "Third Reading. Read the Bill, Mr. Clerk."

Clerk Bolin: "Senate Bill 2413, a Bill for an Act concerning education. Third Reading of this Senate Bill."

Speaker Lyons: "The Gentleman from Vermilion, Representative Bill Black."

Black: "Thank you very... thank you very much, Mr. Speaker and Ladies and Gentlemen of the House. There's no registration fee in this Bill, whatsoever. It's identical to House Bill 5074 that passed the House 109 to 0. It's a request from the Illinois Community College Board. When we changed their term of office, they had to have staggered terms and then they were sworn in at a different time than any other elected official. They've now caught up with their staggered terms and all they're asking for is that they go back to being sworn in within fourteen (14) days after the election rather than the following month. Be glad to answer any questions."

Speaker Lyons: "Is there any discussion? Seeing none, the question is, 'Should Senate Bill 2413 pass?' All those in favor signify by voting 'yes'; those opposed vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Have all voted who wish? Paul Froehlich. Mr. Clerk, take the record. On this Bill, there's 113 Members voting 'yes', 0 voting 'no'. This Bill, having received the Constitutional Majority, is hereby declared passed. Representative Acevedo. Is Representative Eddie Acevedo in the chamber? Mr. Clerk, what's the status, on the top of page 57, of Senate Bill 2595?"

Clerk Bolin: "Senate Bill 2595, the Bill has been read a second time, previously. Amendment #1 was adopted in committee. No Floor Amendments. No Motions are filed."

Speaker Lyons: "Third Reading. Mr. Clerk, on page 57 of the Calendar, Representative Bob Pritchard has Senate Bill 2691. Read... What's the status of that Bill, Mr. Clerk?"

Clerk Bolin: "Senate Bill 2691, the Bill has been read a second time, previously. No Committee Amendments... No Committee Amendments. No Floor Amendments. No Motions are filed."

Speaker Lyons: "Third Reading. And read the Bill, Mr. Clerk."

Clerk Bolin: "Senate Bill 2691, a Bill for an Act concerning education. Third Reading of this Senate Bill."

Speaker Lyons: "The Chair recognizes the Gentleman from DeKalb, Representative Bob Pritchard."