The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN VANCE, *et al.*,

Plaintiffs,

v.

MICROSOFT CORPORATION,

Defendant.

No. 2:20-cv-1082-JLR

**MICROSOFT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS CLAIMS UNDER BIPA SECTION 15(C) AND FOR UNJUST ENRICHMENT**

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. "Otherwise Profit From" Means to Receive a Pecuniary Benefit Directly in Exchange for Biometrics, Which Plaintiffs Do Not Allege .......... 1

A. Section 15(c) Prohibits Only Transactions of Biometric Information or Biometric Identifiers .......... 1

B. Plaintiffs' Apparent Interpretation of Section 15(c) Would Result in Absurd Consequences .......... 4

II. Washington Law Governs Plaintiffs' Unjust Enrichment Claim .......... 5

A. Washington Has the Most Relevant and Important Contacts to Plaintiffs' Unjust Enrichment Claim .......... 7

B. General Principles Under § 6 Also Favor Applying Washington Law .......... 8

C. Sections 145, 152, and 153 Apply to Tort Claims, Not Unjust Enrichment; in Any Event, They Lead to the Same Result .......... 10

CONCLUSION .......... 12



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*,
493 F.3d 841 (7th Cir. 2007) .......... 11

*Bray v. Lathem Time Co.*,
No. 19-3157, 2020 WL 1492742 (C.D. Ill. Mar. 27, 2020).......... 5

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
624 F.3d 185 (5th Cir. 2010) .......... 6, 11

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .......... 11

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 3, 9

*Fernandez v. Kerry, Inc.*,
No. 17-cv-09871, 2020 WL 7027587 (N.D. Ill. Nov. 30, 2020) .......... 3

*Flores v. Motorola Solutions, Inc.*,
No. 1:20-cv-01128 (N.D. Ill. Jan. 8, 2021).......... 4

*Haberman v. Washington Pub. Power Supply Sys.*,
109 Wn.2d 107 (1987) .......... 5

*Johnson v. Spider Staging Corp.*,
87 Wn.2d 577 (1976) .......... 5, 8

*Kelley v. Microsoft Corp.*,
251 F.R.D. 544 (W.D. Wash. 2008) .......... 5, 11

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 8

*Pooh-Bah Enterprises, Inc. v. Cty. of Cook*,
905 N.E.2d 781 (Ill. 2009) .......... 2

*Potlatch No. 1 Fed. Credit Union v. Kennedy*,
76 Wn.2d 806 (1969) .......... 8

*Powers v. Lycoming Engines*,
328 F. App'x 121 (3d Cir. 2009) .......... 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Thornley v. Clearview AI, Inc.*,
984 F.3d 1241 (7th Cir. 2021) ....................1, 5

*Vance v. IBM*,
Case No. 1:20-cv-00577, Dkt. 1 ....................10

*Vance v. Microsoft Corp.*,
No. C20-1082JLR, 2021 WL 963485 (W.D. Wash. Mar. 15, 2021)....................2, 5, 7, 10

*Veridian Credit Union v. Eddie Bauer, LLC*,
295 F. Supp. 3d 1140 (W.D. Wash. 2017)....................6, 7, 10, 11

*In re Woodside Grp., LLC*,
427 B.R. 817 (Bankr. C.D. Cal. 2010)....................6

**Statutes**

740 ILCS 14/5....................3, 5

740 ILCS 14/15(c) ....................1, 2

**Other Authorities**

2008 Reg. Sess. No. 276 (May 30, 2008) ....................3

Restatement (Second) of Conflict of Laws § 221 .................... *passim*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## INTRODUCTION

Pursuant to the Court's March 15, 2021 Order [Dkt. 43], Microsoft submits this supplemental brief to address: (i) the meaning of the phrase "otherwise profit from" under BIPA Section 15(c), including an analysis of recent case law; and (ii) which state's law governs Plaintiffs' unjust enrichment claim under Washington's "most significant relationship" test.

***Section 15(c)***. As discussed below, the phrase "otherwise profit from" refers to an entity providing biometric identifiers or biometric information to another in exchange for a pecuniary benefit, e.g., providing a fingerprint in return for something of value. The words of the statute, the legislative history, and recent case law all make clear that the phrase prohibits only the direct sale of biometrics for profit, not the mere use of facial information to improve commercial facial-recognition technology. Here, Plaintiffs fail to plausibly allege that Microsoft engaged in any transactions of Plaintiffs' biometric data, let alone received a pecuniary benefit from any such transaction. Plaintiffs thus cannot plausibly state a Section 15(c) claim.

***Choice of Law***. Restatement (Second) of Conflict of Laws § 221 governs choice of law for an unjust enrichment claim. Under that provision, Washington law should apply here, since Washington (not Illinois) has the most significant relationship to the factors relevant to the unjust enrichment claim. The Court should therefore dismiss Plaintiffs' unjust enrichment claim.

## ARGUMENT

### I. "Otherwise Profit From" Means to Receive a Pecuniary Benefit Directly in Exchange for Biometrics, Which Plaintiffs Do Not Allege.

#### A. Section 15(c) Prohibits Only Transactions of Biometric Information or Biometric Identifiers.

Under BIPA Section 15(c), "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, *or otherwise profit from* a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c) (emphasis added). This language, by its terms, "flatly prohibits for-profit transactions" involving the provision of biometrics—*even with consent*—whether in the form of selling, leasing, trading, or otherwise exchanging the biometrics directly in return for money or anything else of value. *See Thornley v.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021). Section 15(c)'s first three verbs—"sell," "lease," and "trade"—refer to direct transactions of biometric data in exchange for money or something of value. The statute then tacks on the catch-all term "or otherwise profit from." As the Court noted in analyzing Section 15(b), "[o]therwise" means "[i]n a different manner; in another way, or in other ways." *Vance v. Microsoft Corp.*, No. C20-1082JLR, 2021 WL 963485, at *7 (W.D. Wash. Mar. 15, 2021) (citing Black's Law Dictionary and Oxford English Dictionary). The phrase "otherwise profit from" therefore refers to the act of receiving a pecuniary benefit in exchange for directly providing a biometric identifier or biometric information to another in some transaction *other than* selling, leasing, or trading. Like selling, leasing, or trading a person's biometrics—all of which involve a direct exchange of biometrics in return for value—the phrase "otherwise profit from" must be read in the same way, namely otherwise profiting from a transaction *of* a person's biometric data.

Microsoft's interpretation is consistent with principles of statutory construction and legislative intent. The "cardinal rule of statutory construction," *ejusdem generis*, instructs that "when a statutory clause specifically describes several classes of … things and then includes 'other … things,' the word 'other' is interpreted to mean 'other such like'" things. *Pooh-Bah Enterprises, Inc. v. Cty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009). Reading Section 15(c) in light of this bedrock principle, the phrase "otherwise profit from" does not encompass Plaintiffs' allegation that Microsoft received an indirect "profit" from allegedly using a large dataset of information "to improve the fairness and accuracy of ... facial recognition." *See* Compl. ¶ 57. On the contrary, because the "other such like" things referenced in Section 15(c) all involve a direct exchange of biometrics in return for value (selling, leasing, and trading), the phrase "otherwise profit from" must be read in the same way. Section 15(c) thus prohibits selling, leasing, trading, or engaging in some other profitable transaction for "a person's ... biometric identifier or biometric information," 740 ILCS 14/15(c); it does not prohibit "profiting" indirectly from technology that happens to have been improved using biometrics.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

To the extent the words of the statute leave ambiguity, BIPA's legislative history similarly shows an intent to prohibit only transactions where profit is derived from the exchange of biometric identifiers or information themselves, not the mere use of facial information to improve commercial facial-recognition technology. Indeed, the impetus for the law was the impending *sale* of a database of Illinoisans' fingerprints, i.e., a transaction of biometric data. *See* Dkt. 34, Ex. A, IL H.R. Tran. 2008 Reg. Sess. No. 276 at 112–13 (May 30, 2008) (legislature intended for Section 15(c) to "prohibit[] the *sale* of biometric information" and noting bankruptcy and impending sale of company Pay By Touch "leaves thousands of customers from [several grocery stores] wondering what will become of their biometric and financial data") (emphasis added). The target of the Illinois legislature was therefore *transactions of biometric data*, not the mere use of biometric data in developing or operating products or services. Moreover, BIPA's legislative findings specifically refer to companies still being allowed to use "new applications of biometric-facilitated financial transactions," and the legislature signaled its intent to have those companies realize the "promise [of] streamlined financial transactions and security screenings." 740 ILCS 14/5. The legislature thus plainly intended to *forbid* transactions of biometric data, while allowing companies to achieve the "promise" of "biometric-facilitated" commerce.

Recent BIPA decisions support Microsoft's interpretation of Section 15(c). Most notably, in *Hazlitt v. Apple Inc.*, the Chief Judge for the Southern District of Illinois noted that "by its plain language, section 15(c) clearly prohibits profiting from 'a person's or a customer's' biometric identifier or biometric information, *not the general sales of devices equipped with facial recognition technology*." No. 20-cv-421, 2020 WL 6681374, at *7 (S.D. Ill. Nov. 12, 2020) (emphasis added); *see also Fernandez v. Kerry, Inc.*, No. 17-cv-09871, 2020 WL 7027587, at *1 (N.D. Ill. Nov. 30, 2020) ("*[s]ales of biometric information* are forbidden" under Section 15(c)) (emphasis added); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1155, 1169 (N.D. Cal. 2016) (BIPA "bans the sale or trade of personal biometric information for profit").[1]

Section 15(c) thus prohibits profiting from biometrics through the direct exchange of biometric identifiers or information—not "profiting" from products or services that may have been created using biometrics. And because Plaintiffs do not allege that Microsoft "sold, leased, traded, or otherwise" engaged in any transaction "from" Plaintiffs' "biometric identifiers or biometric information," they fail to state a Section 15(c) claim. They allege only conclusory allegations that Microsoft may have developed products or services using the IBM DiF Dataset. *See, e.g.*, Compl. ¶¶ 57–58. But even if true (which Microsoft denies), those allegations do not plausibly allege that Microsoft has engaged in any transactions of Plaintiffs' biometric data. Given the plain words, legislative history, and case law interpreting Section 15(c), Plaintiffs' claims do not fall within Section 15(c), and the Court should conclude they fail to state a claim under Section 15(c).

**B. Plaintiffs' Apparent Interpretation of Section 15(c) Would Result in Absurd Consequences.**

Plaintiffs' Opposition to Microsoft's Motion to Dismiss does not state precisely how they interpret Section 15(c), but their argument suggests they read "otherwise profit from" to mean "obtain any benefit from biometrics"—regardless how far removed the biometrics may be from the eventual benefit.

That cannot be the case. Under Plaintiffs' interpretation, the statute would flatly ban any product or service developed or validated with biometric data, or using biometric data in its operation. And that ban would extend even to the "biometric-facilitated financial transactions"

---

[1] Plaintiffs' reliance on the terse opinion in *Flores v. Motorola Solutions, Inc.*, No. 1:20-cv-01128 (N.D. Ill. Jan. 8, 2021), is misplaced. In *Flores*, the defendant allegedly sold access to a database of biometric information derived from public "mugshots" to law enforcement. In other words, the allegations involved a defendant *directly* selling biometric information compiled in the database. *See* Dkt. 35-1 at 1. In contrast, Plaintiffs do not allege Microsoft sold their biometric identifiers or information, either individually or in a compilation. *Flores* did not consider or reject the argument that the four verbs in Section 15(c)—"sell, lease, trade, or otherwise profit"—all contemplate the direct provision of biometrics in exchange for money.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that the legislature intended to encourage. 740 ILCS 14/5. In short, Plaintiffs' apparent reading of Section 15(c) would prohibit companies (and the public) from reaping the legitimate benefits of biometrics, as no company could commercially benefit at all from any product or service that relied upon or used biometrics in some way, even if only tangentially and even with consent. That is inconsistent with the statute's plain language, legislative history, and case law. Under the only reasonable interpretation of Section 15(c), the statute prohibits directly profiting "from" an Illinois resident's biometric identifiers or biometric information through the sale, lease, trading, or other similar transactions of that biometric data specifically. It does not prohibit using biometric data generally in developing products or services.[2]

## II. Washington Law Governs Plaintiffs' Unjust Enrichment Claim.

As the Court noted, the forum state's choice-of-law principles (here, Washington) govern when a federal district court sitting in diversity must decide which state's substantive law applies. *Vance*, 2021 WL 963485, at *9. Where, as here, the Court finds an actual conflict between the substantive law of the two states (here, the unjust enrichment laws of Washington and Illinois, *id.* at *10), Washington law requires the Court to apply the law of the state with the "most significant relationship" to the claim. *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 551 (W.D. Wash. 2008); *see also Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580 (1976) (adopting "most significant relationship" test articulated in the Restatement (Second) of Conflict of Laws (the "Restatement"); applying Restatement § 145 to "tort choice-of-law problem"); *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 134, 159 (1987) (same).

[2] As just one example of the absurd results under Plaintiffs' interpretation, many employers use employee-timekeeping systems requiring employees to use their fingerprints to punch in and out of work. Under Plaintiffs' apparent reading, these employers would violate Section 15(c) because they "profit," i.e., save money, by using fingerprint-based timekeeping systems to improve efficiency and prevent "buddy punching." *See Bray v. Lathem Time Co.*, No. 19-3157, 2020 WL 1492742, at *1 (C.D. Ill. Mar. 27, 2020) (alleging "biometric timekeeping systems" sold to employers throughout Illinois benefit employers by eliminating the possibility of "buddy punching"). And the employers could not avoid liability even if they provided notice to and obtained consent from employees in accordance with Section 15(b)—because Section 15(c) is an *absolute prohibition* on "profiting" from biometrics, regardless of the subject's consent. *See Thornley*, 984 F.3d at 1247 (Section 15(c) "flatly prohibits for-profit transactions" in biometrics). That is plainly inconsistent with the words or intent of Section 15(c).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"Application of the 'most significant relationship' test is a two-step process." *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1152 (W.D. Wash. 2017) (Robart, J.). "First, the court determines which state has the most significant relationship to the cause of action." *Id.* "In actions for restitution," as with Plaintiffs' unjust enrichment claim here, the Court should analyze each state's contacts applying the claim-specific factors in Restatement § 221. Restatement § 221 cmt. a ("The rule of this Section applies to claims, which are based neither on contract nor on tort, to recover for *unjust enrichment*.") (emphasis added); *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 193–94 (5th Cir. 2010) (analyzing choice-of-law for unjust enrichment claim under Restatement § 221); *Powers v. Lycoming Engines*, 328 F. App'x 121, 126 (3d Cir. 2009) (same); *In re Woodside Grp., LLC*, 427 B.R. 817, 837 (Bankr. C.D. Cal. 2010) (same). Section 221 lists five contacts relevant to the unjust enrichment claim for the Court to consider:

> (a) the place where a relationship between the parties was centered…,
>
> (b) the place where the benefit or enrichment was received,
>
> (c) the place where the act conferring the benefit or enrichment was done,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement § 221(2).

Second, if the contacts relevant to the claim are balanced, the Court considers "the interests and public policies of potentially concerned states and ... the manner and extent of such policies as they relate to the transaction at issue." *Veridian*, 295 F. Supp. 3d at 1152; *see also* Restatement § 221(1) (incorporating by reference the general principles for choice-of-law analysis enumerated in Restatement § 6).

Under these principles, Washington law applies to Plaintiffs' unjust enrichment claim. As a result, the Court should dismiss that claim.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### A. Washington Has the Most Relevant and Important Contacts to Plaintiffs' Unjust Enrichment Claim.

Under § 221, the place where the alleged benefit was received is the factor "of *greatest importance*" when "the claim to restitution does not stem from any relationship between the parties." Restatement § 221(2) cmt. d (emphasis added). Here, the unjust enrichment claim does not arise from any relationship between the parties. *See Vance*, 2021 WL 963485, at *5 ("Plaintiffs did not directly interact with Microsoft's systems. . . ."). Further, where the alleged act conferring the purported benefit occurred in the same state as where the benefit was allegedly received, that "state will usually be the state of the applicable law." Restatement § 221 cmt. d.

These factors strongly favor Washington. By Plaintiffs' own allegations, the alleged act conferring a benefit on Microsoft, if any, was it purportedly "profiting" from their biometrics by supposedly using the IBM DiF Dataset to improve Microsoft's facial-recognition technology, allegedly making its "products and technologies more valuable in the commercial marketplace." *See* Compl. ¶ 58; *see also id.* ¶¶ 108–112. (To be clear, Microsoft categorically denies it used the IBM DiF Dataset to improve its technology, services, or products—as Plaintiffs know, having received discovery on the point; Microsoft bases its argument on the allegations of the Complaint, since this is a motion to dismiss.) Accordingly, any "profit" Microsoft theoretically obtained would have been realized in Washington, where it is based. *Id.* ¶ 8. Based on the Complaint's allegations, Washington is both "the place where the benefit … was [allegedly] received" and "the place where the act conferring the benefit … was [allegedly] done." Restatement § 221(2)(b)–(c). Because the parties had no direct relationship, factors (b) and (c) predominate the Court's analysis and weigh decisively in favor of applying Washington law.

By contrast, the remaining factors under § 221 are inapplicable or neutral.

***Relationship between the parties***. Plaintiffs do not allege a relationship with Microsoft, as they "did not directly interact with Microsoft's systems." *Vance*, 2021 WL 963485, at *5. Because the parties had no relationship, factor (a) does not apply and deserves no weight. *See Veridian*, 295 F. Supp. 3d at 1154 ("[T]he parties' relationship is not centered in any one place.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The parties did not contract with one another. … Thus, the court finds that this factor bears little, if any, weight in the court's choice-of-law analysis.") (internal citations omitted).

***Location of the parties***. Plaintiffs allegedly are Illinois citizens; Microsoft is a Washington corporation based in Washington. Compl. ¶¶ 6–8. Factor (d), "the domicil, residence, place of incorporation, and place of business of the parties," is therefore neutral as between Illinois and Washington. Restatement § 221(2)(d).

***Location of any "physical thing … substantially related to the enrichment."*** Plaintiffs' allegations turn on intangible things such as "facial geometric scans," datasets, and "facial recognition" software. *See, e.g.*, Compl. ¶¶ 6, 40, 58. Plaintiffs do not allege any "physical thing, such as land or a chattel, was substantially related to the enrichment." Restatement § 221(2)(e). Factor (e) is thus inapplicable and entitled to no weight.

The contacts identified in § 221 therefore counsel in favor of applying Washington law.

**B. General Principles Under § 6 Also Favor Applying Washington Law.**

Section 6 also provides general principles that inform the Court's "most significant relationship" test under § 221. Restatement § 221(1)–(2). Under these principles, the Court should still apply Washington law given "the interests and public policies of potentially concerned states and ... the manner and extent of such policies as they relate to the transaction in issue." *Johnson*, 87 Wn.2d at 582 (quoting *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 810 (1969)). In assessing state interests and public policy, the Court should consider *both* a state's decision to protect privacy rights *and* a state's decision *not* to impose liability for conduct that may subject an entity to liability elsewhere. "In our federal system, states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 592 (9th Cir. 2012).

Both Washington and Illinois have statutes regarding biometric privacy, reflecting the states' respective policies regarding the privacy rights of their citizens and the burdens they

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

choose to impose on business. *See* Mot. to Dismiss at 12–15. As Microsoft explained in its Motion, the Washington and Illinois statutes not only differ in reach but also establish inconsistent requirements. *Id.* at 12–13. As a result, the allegations in the Complaint do not give rise to liability against Microsoft under Washington's biometrics law. Plaintiffs do not contend otherwise. Microsoft, a Washington corporation, is entitled to the protections (and exemptions) the Washington statute affords, as that statute reflects the balancing the Washington legislature struck in regulating Washington citizens' use of biometric identifiers or biometric information. Microsoft therefore has a justified expectation that Washington's biometrics law would apply to it, and not a far-flung state's law. This matters, because the "most significant relationship" test recognizes "it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restatement § 6(2) cmt. g. Microsoft, a Washington corporation based in Washington and governed by Washington's biometric law, could not reasonably expect that downloading a dataset outside of Illinois from IBM (located in New York) would subject it to liability under an Illinois statute. In these circumstances, the public policy considerations tilt in favor of Washington law.

At the very least, the public policy considerations are neutral. This is not a case where one state consciously decided to implement biometric privacy protections while the other was silent on the subject. *See In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1169–70 (declining to enforce Facebook's California choice-of-law provision and noting conflict between Illinois and California law was "all the more pronounced because California has no law or policy equivalent to BIPA, … has not legislatively recognized a right to privacy in personal biometric data[,] and has not implemented any specific protections for that right or afforded a private cause of action to enforce violations of it"). Rather, each state has spoken on the issue—but they have chosen to strike a different biometric privacy balance.

The Restatement factors under § 221 viewed in the light of the general principles in § 6 thus counsel in favor of applying Washington law.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**C. Sections 145, 152, and 153 Apply to Tort Claims, Not Unjust Enrichment; in Any Event, They Lead to the Same Result.**

The Court's March 15, 2021 Order directed the parties to address "how the contacts analysis [under the 'most significant relationship' test] differs, if at all, for an unjust enrichment claim in a privacy suit." *Vance*, 2021 WL 963485, at *10. In so doing, the Court directed the parties' attention to Restatement §§ 145-55. *Id.*

Section 145 provides the basic choice-of-law rules for issues arising in tort, and the relevant contacts under § 145 also weigh in favor of Washington law. Because the parties do not have a direct relationship, "the place where the defendant's conduct occurred will usually be given *particular weight* in determining the state of the applicable law." Restatement § 145(2) cmt. e (emphasis added). Here, as a Washington corporation, Microsoft's alleged conduct occurred in Washington. *See Veridian*, 295 F. Supp. 3d at 1153–54 ("Veridian alleges that Eddie Bauer 'orchestrated and implemented' the decisions that lead to the Data Breach 'at its corporate headquarters in Bellevue, Washington,' and its failure to employ adequate data security measures 'emanated from [its] headquarters.' Based on these allegations, the court concludes that the place where the conduct alleged to have caused the injury occurred was in Washington.") (internal citations omitted). The remaining factors are inapplicable or neutral at best. Because the parties had no relationship, the relationship factor has no weight. Restatement § 145(2)(d). The domicil, residence, place of incorporation, and place of business of the parties (a Washington corporation and alleged residents of Illinois) remain neutral as between Illinois and Washington. Restatement § 145(2)(c).

Plaintiffs may claim Illinois has special status because they live in Illinois, making that the locus of any injury. But "[t]he place where the injury occurred" should receive little, if any, weight when "the place of injury…[was] fortuitous." *Veridian*, 295 F. Supp. 3d at 1153. Here, the IBM DiF Dataset included many thousands of images of people from all over the world. Indeed, Plaintiff Vance's first complaint filed against IBM in the Northern District of Illinois (before his case was consolidated with Plaintiff Janecyk's) alleged that "[r]esearch suggests that over 30 percent of Flickr images are uploaded from the United States." *Vance v. IBM*, Case No.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1:20-cv-00577, Dkt. 1, Class Action Compl. ¶ 48 (Jan. 24, 2020). In other words, approximately *70 percent* of the images in the IBM Dataset were likely uploaded by people *outside the United States*. This case therefore presents one of those "[s]ituations ... where the defendant had little, or no, reason to foresee that his act would result in injury in the particular state [of Illinois]. Such lack of foreseeability on the part of the defendant is a factor that will militate against selection of the state of injury as the state of the applicable law." Restatement § 145(2) cmt. e.

Under these circumstances, "the place of injury will not play an important role in the selection of the state of the applicable law." *Id.*; *see also Veridian*, 295 F. Supp. 3d at 1153 ("Veridian alleges that Eddie Bauer's conduct with respect to the Data Breach caused injury in a variety of states throughout country; thus, the location of the alleged harm was fortuitous, and the place of injury does not play an important role in the court's choice of law analysis here.") (internal citations omitted); *Kelley*, 251 F.R.D. at 552 ("[T]he Defendant's allegedly unfair or deceptive acts caused injury throughout the country. The location of the harm suffered is fortuitous."). Moreover, when plaintiffs seek disgorgement as their remedy, as Plaintiffs do here, courts "place less importance on where the injury occurred, as disgorgement is not meant to compensate for a loss." *Casa Orlando*, 624 F.3d at 191; Compl. ¶ 116 (seeking disgorgement as remedy for unjust enrichment claim)

Under the factors in Section 221, which control here, and under the general principles governing the "most significant relationship" test in Section 6, the Court should apply Washington law to determine whether Plaintiffs state a claim against Microsoft for unjust enrichment.[3]

[3] If the Court holds Illinois law governs Plaintiffs' unjust enrichment claim, the claim should *still* be dismissed for the same reasons their Section 15(c) claim should be dismissed. Under Illinois law, where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("Where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Finally, while Washington law would apply, Microsoft respectfully notes that Sections 145, 152, and 153 do not have any bearing on Plaintiffs' unjust enrichment claim because these Sections apply to tort claims, while § 221 specifically addresses claims for restitution, such as unjust enrichment. Restatement § 145(1) (applies to "an issue in tort"); *id.* § 152 (applies to "invasion of privacy" tort); *id.* § 153 (applies to "multistate invasion of privacy" tort "where matter that violates a person's right of privacy is contained in an aggregate communication which is published to persons other than the plaintiff in two or more states"). Further, the Restatement lists each of these sections under Chapter 7 and Topic 1, "Torts." But even if the Court were to consider these sections, the outcome would remain the same.

* * *

Microsoft respectfully submits that discovery is unnecessary to resolve this choice-of-law issue. Based on the allegations in the Complaint, the key factors weigh in favor of applying Washington law. But if discovery and an evidentiary record would benefit the Court, Microsoft would welcome the opportunity to provide factual support confirming that Illinois has no relevant contacts to this claim (or the case generally) and that, instead, Washington has the most significant relationship to the matters alleged in the unjust enrichment claim.

**CONCLUSION**

For the foregoing reasons, Microsoft respectfully requests that the Court dismiss Plaintiffs' claims for violation of Section 15(c) and for unjust enrichment with prejudice.

DATED this 26th day of March, 2021.

DAVIS WRIGHT TREMAINE LLP

By */s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
Xiang Li, WSBA #52306
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Tel: 206-622-3150
E-mail: steverummage@dwt.com
E-mail: xiangli@dwt.com

MICROSOFT'S SUPPLEMENTAL BRIEF ISO MTD (2:20-cv-1082-JLR) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

MORGAN LEWIS & BOCKIUS

By */s/ Elizabeth B. Herrington*
   Elizabeth B. Herrington (pro hac vice)
   Tyler Zmick (pro hac vice)
77 West Wacker Drive, Suite 500
Chicago, IL 60601-5094
E-mail: beth.herrington@morganlewis.com
E-mail: tyler.zmick@morganlewis.com

***Attorneys for Defendant Microsoft Corporation***

MICROSOFT'S SUPPLEMENTAL BRIEF ISO MTD (2:20-cv-1082-JLR) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax