The Honorable James L. Robart

1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN VANCE, *et al.*,

                    Plaintiffs,

        v.

MICROSOFT CORPORATION,

                    Defendant.

2:20-cv-01082-JLR

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(b)(3)**

**NOTE ON MOTION CALENDAR:**
January 13, 2022

**ORAL ARGUMENT REQUESTED**

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iiI

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

*The Illinois Biometric Information Privacy Act* ........................................................... 2

*Creation of the DiF Dataset* ......................................................................................... 3

*The DiF Dataset – Geolocation Data* ........................................................................... 5

*Defendant's Obtainment of the DiF Dataset.* ............................................................... 6

ARGUMENT ................................................................................................................... 7

I.    Legal Standards ....................................................................................................... 7

II.   Plaintiffs Have Satisfied Their Burden for Certification Under Rules 23(a) and (b)(3). ... 8

    A.    The Proposed Classes Are Sufficiently Numerous. ................................................. 8

    B.    Common Questions Predominate Over Individual Issues. ...................................... 9

    C.    Steven Vance and Tim Janecyk Are Typical of the Proposed Classes ................. 13

    E.    A Class Action Is Superior to Other Available Methods of Adjudication. .......... 18

CONCLUSION ............................................................................................................. 24

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

## TABLE OF AUTHORITIES

### CASES

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)................................................ 17

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013) .............. 9

*Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069,
   2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) ........................... 19

*Barton v. Walmart Inc.*, 1:21-cv-4329 (N.D. Ill.) ........................................... 20

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................... 23, 25, 29

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) ............................. 16

*Coons v. Yum! Brands, Inc.*, 3:21-cv-45 (S.D. Ill.)........................................... 20

*Cotton v. Ring LLC*, 1:20-cv-02479 (N.D. Ill.)............................................... 19

*Does 1-10 v. Univ. of Wash.*, 326 F.R.D. 669 (W.D. Wash. 2018) ........................ 9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................... 9

*Etter v. Allstate Ins. Co.*, 323 F.R.D. 308 (N.D. Cal. 2017) ............................... 25

*Garcia v. Sarpino's USA, Inc.*, 21-CH-398 (Cir. Ct. Cook Cnty.) ............................... 20

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), ....................................... 11, 12, 15, 17

*Hendricks v. GoBrands, Inc.*, 21-L-60 (Cir. Ct. Sangamon Cnty.) ........................... 20

*In re Abbott Labs. Norvir Antitrust Litig.*, Nos. 04-cv-01511,
04-4203, 2007 WL 1689899 (N.D. Cal. June 11, 2007)................................. 10

*In re Clearview AI, Inc., Consumer Privacy Litig.*, No. 21 C 0135,
2021 WL 916056 (N.D. Ill. Mar. 10, 2021) ........................................... 18

*In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018) ...................... 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010).................... 17

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015)............................... 10

*In Re: Rust-Oleum Restore Marketing, Sales Practices and
Products Liability Litigation*, 1:15-cv-1364 (N.D. Ill.) ................................. 20

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - ii

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

*In Re: TikTok, Inc., Consumer Privacy Litig.*, No. 1:20-cv-04699,
   MDL No. 2948 (N.D. Ill.) ......................................................................... 19

*Jammeh v. HNN Assoc., LLC*, No. C19-0620JLR,
   2020 WL 5407864 (W.D. Wash. Sept. 9, 2020) ................................ 11, 12, 15, 22

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ................................ 22

*Mabry v. Standard Indus., Inc.*, No. 20-cv-376,
   2020 WL 2112372 (N.D. Ill. May 4, 2020) ........................................... 14

*Martin v. Johnson Controls Fire Protection LP*,
   No 2:19-cv-514-RAJ, 2020 WL 4747849 (W.D. Wash. Aug. 17, 2020) .................. 11

*Melgar v. CSK Auto, Inc.*, 681 Fed. Appx. 605 (9th Cir. 2017) ......................... 25

*Melgar v. CSK Auto, Inc.*, No. 13-cv-03769, 2015 WL 9303977 (N.D. Cal. Dec. 22, 2015) ...... 25

*Monroy v. Shutterfly, Inc.*, 1:16-cv-10984, (N.D. Ill.) ................................. 19

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) .......................... 24

*Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX,
   2019 WL 4854849 (C.D. Cal. Oct. 1, 2019), *appeal withdrawn*, No. 19-80139,
   2019 WL 7576695 (9th Cir. Nov. 18, 2019) ........................................... 25

*Rivera v. Google*, 1:16-cv-02714 (N.D. Ill.) ........................................... 19

*Robinson v. Petco Animal Supplies, Inc.*, No. 21-CH-273 (Cir. Ct. Cook Cnty.) ......... 20

*Rosario v. U.S. Citizenship and Immig. Svcs.*, No. C15-0813JLR,
   2017 WL 3034447 (W.D. Wash. July 18, 2017) ......................................... 15

*Rosenbach v. Six Flags Entertainment Corp.*, 159 N.E.2d 1197 (2019) .................... 14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ....... 28, 29

*Vance v. Int'l Business Machines Corp.* ("*IBM*"), No. 20 C 577 (N.D. Ill.) ............. 18

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ............................... passim

*Whalen v. Facebook, Inc.*, 4:20-cv-06361 (N.D. Cal.) ................................... 19

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ................ 23, 28

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ................. 8

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

1

**STATUTES**

2

740 Ill. Comp. Stat. 14/1, *et seq.* ............................................................. 1, 2

3

740 Ill. Comp. Stat. 14/5 ........................................................................... 2

4

740 Ill. Comp. Stat. 14/10 ................................................................. 2, 11, 12

5

740 Ill. Comp. Stat. 14/15 .............................................................. 2, 10, 11, 12

6

740 Ill. Comp. Stat. 14/20 ........................................................................ 18

7

**RULES**

8

Fed. R. Civ. P. 23 ............................................................................ passim

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Loevy & Loevy
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Steven Vance ("Plaintiff Vance") and Tim Janecyk ("Plaintiff Janecyk," collectively with "Plaintiff Vance," "Plaintiffs") hereby move for: (a) certification of a class of Illinois residents whose faces appear in photographs linked to in the biometric dataset known as the Diversity in Faces Dataset or, alternatively, of a subclass of Illinois residents whose faces appear in this dataset, as set forth below; (b) appointment of Plaintiffs as class representatives; and (c) appointment of Loevy & Loevy and Carlson Lynch LLP as class counsel.

## INTRODUCTION

This case arises out of the alleged unlawful obtainment by Defendant Microsoft Corporation ("Defendant" or "Microsoft") in 2019 of the biometric identifiers and biometric information (collectively, "Biometric Data") of Illinois residents through its acquisition of the Diversity in Faces Dataset (the "DiF Dataset"). The DiF Dataset was released by International Business Machines Corporation ("IBM") in 2019 and consisted of, *inter alia*: (a) URL links to approximately one million photographs posted on the photo-sharing website Flickr that contained facial images; and (b) Biometric Data related to those linked images – *e.g.*, facial key points extracted via a scan of the face geometry of the facial images and related craniofacial measurements. By obtaining and using the DiF Dataset without providing notice to, or obtaining the written consent of, Illinois residents whose Biometric Data was contained in the dataset, Defendant: (a) deprived those residents of their ability to control their Biometric Data; (b) violated Illinois' Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1, *et seq.*, which provides special protections of the data at issue; and (c) unjustly enriched itself.

On July 14, 2020, Plaintiffs filed this putative class action against Defendant for its unlawful conduct, alleging, among other things, a violation of BIPA § 15(b) (Count One) and unjust enrichment (Count Three). Resolution of the merits of those claims is not presently before the Court. Plaintiffs seek class certification for those causes of action, which are perfectly suited for certification.

Loevy & Loevy
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

Plaintiffs seek to certify a class of all Illinois residents whose faces appear in photographs linked to in the DiF Dataset or, alternatively, a subclass consisting of all Illinois residents whose faces appear in photographs they uploaded to Flickr that are linked to in the DiF Dataset. With respect to these classes, each of the factors under Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality and adequacy – strongly weigh in favor of certification. Likewise, the predominance and superiority factors set forth in Federal Rule of Civil Procedure 23(b)(3) strongly favor certification. Importantly, the critical questions of whether Defendant obtained the biometric identifiers and biometric information (as those terms are defined in BIPA) of each individual class member without providing notice or obtaining written consent will have common answers applicable to each member of the proposed classes. Accordingly, the Court should certify the proposed class, or alternatively, the subclass, appoint Plaintiffs as class representatives and appoint Loevy & Loevy and Carlson Lynch LLP as class counsel.

## FACTUAL BACKGROUND

### The Illinois Biometric Information Privacy Act

BIPA strictly regulates an individual's Biometric Data. *See* 740 Ill. Comp. Stat. 14/1, *et seq.* Under Illinois law, "biometric identifiers" include a "scan of . . . face geometry," and "biometric information" is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 Ill. Comp. Stat. 14/10. BIPA prohibits a private entity from, among other things: (a) collecting, capturing or otherwise obtaining an individual's Biometric Data without providing written notice and obtaining a written release. *See* 740 Ill. Comp. Stat. 14/15(b).

In enacting BIPA, the Illinois General Assembly recognized the sensitive and unique nature of Biometric Data:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 Ill. Comp. Stat. 14/5(c).

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

*Creation of the DiF Dataset*

In or around 2014, Flickr – through its parent company Yahoo! – released a dataset (the "Flickr Dataset") consisting of URL links to approximately 100 million Flickr photographs, as well as metadata related to the photographs. Exhibit 1[1] (Merler Dep. Tr.[2]) at 15:6-11, 23:3-36:13; Exhibit 2 (Martin Dep. Tr.) at 73:13-74:2, 74:21-75:15, 76:4-15, 76:21-77:5, 77:9-78:12, 80:17-82:11, 83:25-84:22, 87:15-89:3; Exhibit 3 (Flickr Dataset ReadMe File) at 1-2. The Flickr Dataset contained a plethora of information for the photographs linked to therein. *See* Ex. 3 (Flickr Dataset Readme File) at 2; Ex. 1 (Merler Dep. Tr.) at 23:3-36:13. This information included: (a) URL links to the photographs as they appear on the Flickr pages of the users who uploaded them; (b) URL links to a Flickr webpage that only contained the uploaded photograph; (c) information identifying the Flickr user who uploaded the image, including a unique identification number (the "Flickr ID" or "User NSID") and user nickname; (d) geolocation information for where the photograph was taken – *i.e.*, latitudinal and longitudinal coordinates; and (e) information about the photographs, including the unique identifier assigned to each photograph, the date the photograph was taken, the date the photograph was uploaded to Flickr, as well as any title, descriptions and tags related to the photograph. Ex. 1 (Merler Dep. Tr.) at 23:3-44:5; Ex. 2 (Martin Dep. Tr.) at 73:13-74:2; 74:21-75:15, 76:4-15, 76:21-77:5, 77:9-78:12, 80:17-82:11, 83:25-84:22, 87:15-89:3; Ex. 3 (Flickr Dataset ReadMe File) at 2.

In or about 2018, researchers released *Gender Shades: Intersectional Accuracy Disparities in Commercial Gender Classification* ("*Gender Shades*") in which they noted that prior studies had shown that "machine learning algorithms can discriminate based on classes like race and gender." Exhibit 4 (*Gender Shades*). The researchers analyzed three commercial facial recognition products – including a Microsoft and an IBM product – and highlighted the high error rates each

---

[1] Unless otherwise noted, all citations to exhibits are to those exhibits attached to the Drury Declaration, attached hereto as Exhibit A.

[2] Dr. Michele Merler was one of IBM's "technical leads" for the DiF project, with the role of, *inter alia*, designing the coding schemes that IBM extracted from face images, downloading the images to be used in the project and processing the images. Ex. 1 (Merler Dep. Tr.) at 69:25-70:10.

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 3

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

product had with respect to correctly identifying females and darker-skinned individuals. *Id*. at 1, 8-9. The research found that Defendant's error rate with respect to classifying darker females was 20.8%. *Id*. at 9.

In early 2019, in the wake of *Gender Shades*, IBM released the DiF Dataset. *See* Exhibit 5 ("*Diversity in Faces*" Publication – Feb. 2019). According to IBM, the DiF Dataset would "accelerate efforts towards creating more fair and accurate face recognition systems." *Id.* at 1; *see also* Ex. 1 at 69:7-24. IBM created the DiF Dataset by culling numerous facial images from the Flickr Dataset and processing them to extract Biometric Data and other information. *See* Ex. 5 at 7-16.

Specifically, based on documents produced by Defendant, the version of the DiF Dataset provided to Defendant contained 969,340 individual lines, with each line corresponding to a face.[3] *See* Exhibit 6 (DiF ReadMe File) at CM/ECF 2. Each line of the DiF Dataset contains the following information, among others, with respect to the corresponding face: (a) a URL link to the facial image; (b) "a unique id (face number)"; (c) sixty-eight facial key points landmarks (known as "dlib points") extracted from each face; (d) craniofacial measurements and information extracted from each face using ten different coding, including craniofacial distances, areas, and ratios, facial symmetry and facial contrast. *See id.* at CM/ECF 2-4; Ex. 1 (Merler Dep. Tr.) at 76:9-79:9, 80:22-81:24; Exhibit 7 (DiF Slide Deck) at CM/ECF 6-7, 10-16, 43. According to Dr. Michele Merler, in order to obtain the sixty-eight facial key points or dlib points, IBM created a graph on each face and determined the X-Y coordinates of those key points. *See* Ex. 1 (Merler Dep. Tr.) at 111:7-113:9.

The DiF Dataset links to photographs uploaded by Plaintiffs in Illinois that contain their respective face image. *See* Exhibit 8 (Vance Supp. Interrog. Ans.) at No. 4; Exhibit 9 (Vance Dep. Tr.) at 255:8-16; Exhibit 10 (Janecyk Supp. Rog. Ans.) at No. 4; Exhibit 11 (Janecyk Dep. Tr.) at

---

[3] The DiF Dataset, itself, is a very large .CSV file that is not conducive to being printed as an exhibit. At the Court's request, Plaintiffs can provide the Court with an electronic copy of the version of the DiF Dataset that Defendant has produced in discovery.

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

81:13-21, 97:21-98:1. Plaintiffs are longtime Illinois residents who resided in Illinois when Defendant obtained the DiF Dataset in 2019. *See* Ex. 9 (Vance Dep. Tr.) at 9:17-10:9, 74:2-74:4; Ex. 11 (Janecyk Dep. Tr.) at 39:17-40:1.

### The DiF Dataset – Geolocation Data

In connection with a version of the DiF Dataset created after the one obtained by Defendant that linked to 715,351 faces images,[4] Dr. Merler prepared a spreadsheet setting forth the number of faces to which the DiF Dataset linked that had geolocation data (latitudinal and longitudinal data) and the countries and U.S. states in which the photographs containing those images were taken. *See* Ex. 1 (Merler Dep. Tr.) at 98:24-108:18; *see also* Exhibit 12 (DiF Dataset Geolocation Spreadsheet). According to the spreadsheet, of the 715,351 faces in the DiF Dataset, 334,841 had no geotag – *i.e.*, no geolocation information, and the remaining 380,510 faces were in photographs with geotags. *See* Ex. 12 (DiF Dataset Geolocation Spreadsheet) at 1; Ex. 1 (Merler Dep. Tr.) at 102:24-103:15. Thus, only 53% of the face images were in photographs with geolocation information.

Of the face images with geolocation information, 155,400 (or approximately 41%) were geotagged in the United States. Ex. 12 (DiF Dataset Geolocation Spreadsheet) at 1; Ex. 1 (Merler Dep. Tr.) at 103:20-104:9, 104:22-105:25. The spreadsheet further shows that 5,727 of the face images in the version of the DiF Dataset had Illinois geolocation information. Ex. 12 (DiF Dataset Geolocation Spreadsheet) at 7; Ex. 1 (Merler Dep. Tr.) at 106:17-109:10. The table below summarizes the above-described geolocation information:

---

[4] Dr. Merler testified that this version of the DiF Dataset had fewer faces than earlier version because IBM progressively removed lines from the dataset when: (a) Flickr Users requested that their photographs be removed from the dataset; and (b) the URL links went "dead" – *i.e.*, when a Flickr user removed the image from Flickr or made it private. *See* Ex. 1 (Merler Dep. Tr.) at 79:19-80:5.

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

|  | No. of Faces in Geotagged Photos | Percentage |
|---|---|---|
| Full Dataset | 380,510 out of 715,351 | 53% |
| United States | 155,400 | 41% (of faces in geotagged photos) |
| Illinois | 5,727 | 3.7% (of faces in U.S. geotagged photos) |

Given that only 53% of the faces in the version of the DiF Dataset described above were in geotagged photographs, and given that Defendant received an earlier version of the DiF Dataset with 969,340 linked faces – 27% more than in the version described above – common sense dictates that the number of faces in photographs taken in Illinois in Defendant's version of the dataset is significantly higher than 5,727.

***Defendant's Obtainment of the DiF Dataset.***

Defendant, via its agents Samira Samadi and Benjamin Skrainka, obtained the DiF Dataset and the Biometric Data therein from IBM on two occasions in February of 2019 for the purpose of "benchmarking and evaluation of facial-recognition programs" and researching "bias in human-in-the-loop facial recognition systems." *See* Exhibit 13 (Defendant's Supp. Interrog. Ans.) at No. 12; *see also* Exhibit 14 (Samadi-IBM Email Chain); Exhibit 15 (Samadi/Microsoft DiF Request Questionnaire); Exhibit 16 (Skrainka-IBM Email Chain); Exhibit 17 (Skrainka/Microsoft DiF Request Questionnaire). Mr. Skrainka has informed Plaintiffs that he downloaded the DiF Dataset to Defendant's "virtual machines and cloud storage." Exhibit 18 (3/19/2021 Skrainka Email). While Defendant has yet to concede that Mr. Skrainka downloaded the DiF Dataset to its servers, it admits that if it was so downloaded, Defendant would have stored it on servers in San Antonio, Texas and Chicago, Illinois. Ex. 13 (Defendant's Supp. Interrog. Ans.) at No. 8.

Prior to downloading the DiF Dataset, Defendant did not provide notice to, or obtain the written consent of, Illinois residents whose facial images are linked to in the dataset. *See id.* at No. 3 (setting forth reasons Defendant did not comply with BIPA); Exhibit 19 (Defendant's Ans. to Interrog.) at No. 4 (attempting to explain why Defendant was not required to provide notice or

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

obtain consent); Ex. 9 (Vance Dep. Tr.) at 58:17-19, 93:6-94:4, 190:3-12, 201:14-202:18; Ex. 11 (Janecyk Dep. Tr.) at 121:8-14, 121:18-21, 135:15-21, 178:22-179:2.  To date, Microsoft has failed to identify any examples of it providing such notice or obtaining such written consent. Exhibit A (Drury Declaration) ¶ 2.

ARGUMENT

## I. Legal Standards.

Under Federal Rule of Civil Procedure Rule 23(a), a party seeking certification must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 345 (2011). The proposed class must also qualify under Rule 23(b)(1), (2), or (3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Pursuant to Rule 23(b)(3), under which Plaintiffs seek certification, a class action for damages may proceed where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The district court must conduct a rigorous analysis to determine whether Plaintiffs have met their burden to pursue their claims as a class action. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Nonetheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The question before the Court "is not whether . . .

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 7

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

[Plaintiff] ha[s] stated a cause of action or will prevail on the merits, but rather whether the requirements of class certification are met." *Eisen*, 417 U.S. at 178.

## II.     Plaintiffs Have Satisfied Their Burden for Certification Under Rules 23(a) and (b)(3).

Plaintiffs seek certification of the following classes pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> **Class:** All Illinois residents whose faces appear in photographs linked to in the DiF Dataset Defendant obtained.

> **Alternative Subclass:** All Illinois residents whose faces appear in photographs linked to in the DiF Dataset Defendant obtained and who uploaded the photographs to Flickr.

The class and alternative subclass are collectively referred to as the "Classes," and members of the class and subclass are collectively referred to as "Class Members." The Classes do not include: (a) Defendant; (b) any parent, affiliate or subsidiary of Defendant; (c) any entity in which Defendant has a controlling interest; (d) any of Defendant's officers or directors; (e) any successor or assign of Defendant; and (f) any judge or court personnel assigned to this case or their immediate families. The proposed Classes satisfy the requirements of Rule 23(a) and (b)(3).

### A.     The Proposed Classes Are Sufficiently Numerous.

Rule 23(a)(1) requires a proposed class to be "so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). That standard is generally met when the proposed class contains at least forty members. *Does 1-10 v. Univ. of Wash.*, 326 F.R.D. 669, 678-79 (W.D. Wash. 2018) (citing cases). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589-90 (N.D. Cal. 2015). Further, "[w]here 'the exact size of the class in unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *In re Abbott Labs. Norvir Antitrust Litig.*, Nos. 04-cv-01511, 04-4203, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (quoting *Newberg on Class Actions* § 3.3 (4th ed. 2002)).

Here, the Classes are sufficiently numerous. The DiF Dataset obtained by Defendant contains 969,340 facial images. Ex. 6 (DiF ReadMe File) at CM/ECF 2. Based on Dr. Merler's

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 8

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

geolocation data (which accounts for a little over half of the total number of faces), the geolocation of approximately 41% of the faces in geotagged photographs (155,400) was in the United States. *See* Ex. 12 (DiF Dataset Geolocation Spreadsheet) at 1. Of those 155,400 faces, 5,727 were in photographs geotagged in Illinois. *Id.* at 7. Notably, Dr. Merler performed his analysis on a version of the DiF Dataset that was 27% smaller than the one obtained by Defendant. *See* Ex. 1 (Merler Dep. Tr.) at 79:11-80:5, 98:24-108:18. Whether looking at Dr. Merler's analysis of geotagged photographs or extrapolating that information to estimate the full number of faces geotagged in the United States or Illinois (*i.e.*, inferring that the percentage of non-geotagged photographs taken in the United States or Illinois mirrors the percentages evidenced in the geotagged photographs), general knowledge, common sense and reasonable inferences lead to the conclusion that the Classes are sufficiently numerous because each contains over forty members.

### B.     Common Questions Predominate Over Individual Issues.

Under Rule 23(a)(2), a party seeking class certification must show the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class's claims "must depend upon a common contention . . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. For purposes of Rule 23(a)(2), a single common question is sufficient. *Id.* at 359. In determining the existence of commonality, a court should determine whether proceeding on a class-wide basis will generate common answers to common questions that will promote resolution of the litigation. *Id.* Courts construe Rule 23(a)(2) permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds*, *Dukes*, 564 U.S. 338 (2011).  Where class members' claims "stem from the same source," sufficient factual commonality exists to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1020.

The requirements of Rule 23(a)(2) "are less rigorous than the companion requirements of Rule 23(b)(3)." *Id.* at 1019. The predominance inquiry under Rule 23(b)(3) examines whether a proposed class is sufficiently cohesive to warrant representative adjudication. *Id.* at 1022. "Rule

23(b)(3) focuses on the relationship between the common and individual issues." *Id.* If common questions constitute a significant aspect of the case and can be resolved for all class members in one adjudication, handling the matter on a representative basis is clearly justified. *Id.* The predominance determination begins with an examination of the elements of the underlying cause of action. *Jammeh v. HNN Assoc., LLC*, No. C19-0620JLR, 2020 WL 5407864, at *17 (W.D. Wash. Sept. 9, 2020). A primary concern of the predominance test is whether adjudication of common issues will promote judicial economy. *Martin v. Johnson Controls Fire Protection LP*, No 2:19-cv-514-RAJ, 2020 WL 4747849, at *2 (W.D. Wash. Aug. 17, 2020).

Here, all Class Members' claims under BIPA § 15(b) and for unjust enrichment stem from the same source – *i.e.*, Defendant's obtainment of their Biometric Data without providing the requisite notice or receiving the requisite written consent. *See* Dkt. 43 (Motion to Dismiss Order) at 15-19 (discussing Complaint's allegations regarding the obtainment of Biometric Data). This alone establishes sufficient factual commonality. *See Hanlon*, 150 F.3d at 1020. Even if it did not, there are numerous common questions and answers that satisfy commonality and predominance.

### 1.     Common Issues Predominate with Respect to the § 15(b) Claim.

Under BIPA § 15(b), a private entity that "collect[s], capture[s], . . . or otherwise obtain[s] a person's or customer's biometric identifier or biometric information" must first inform that person that the information is being obtained and the reason therefore and receive a "written release" from the person. 740 Ill. Comp. Stat. 14/15(b). Each element can be satisfied by common proof in one stroke. *See Jammeh¸* 2020 WL 5407864, at *17; *Dukes*, 564 U.S. at 350.

### a.     Defendant Obtained Class Members' Biometric Data.

As a threshold matter, it is undisputed that Microsoft obtained the DiF Dataset. *See* Dkt. 59 (Answer) ¶ 55; Ex. 13 (Defendant's Supp. Interrog. Ans.) at No. 8 (admitting Defendant downloaded the DiF Dataset to a Microsoft server). As discussed above, both Classes consist of Illinois residents whose facial images are linked to in the DiF Dataset. *See, supra*.

Further, the DiF Dataset contains the Biometric Data of every Class Member. According to Dr. Merler, after IBM determined which images to include in the DiF Dataset, the same

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

machine-learning processes were run on each of the faces therein. Ex. 1 (Merler Dep. Tr.) at 9:4-8; 46:16-47:5; 69:25-70:10; 71:24-72:5. As discussed above, those machine-learning processes extracted sixty-eight facial key points in the form of X-Y coordinates and performed various craniofacial measurements. *See id.* at 72:9-73:20, 78:24-79:9, 80:22-81:24,111:7-13:9; Ex. 7 (DiF Slide Deck) at CM/ECF 6-7, 11, 43. Plaintiffs contend that the extraction of the geometric facial key points and the craniofacial measurements constitute "biometric identifiers" – *i.e.*, scan[s] of face geometry – under BIPA. *See* 740 Ill. Comp. Stat. 14/10 (defining "biometric identifier").

Moreover, each line of the DiF Dataset contains a URL link to a photograph from which IBM extracted Biometric Data from a facial image, along with the extracted Biometric Data. *See* Ex. 1 (Merler Dep. Tr.) at 70:11-22; 78:24-79:9 (each line of the DiF Dataset contains the "coordinates of the 68 dlib points and then the information from the [ten] coding schemes that we extracted."). Given that the sixty-eight facial key points (or dlib points) and coding schemes extracted from each facial image were tied to that unique image, they constituted biometric information ("any information . . . based on an individual's biometric identifier used to identify an individual"). *See* 740 Ill. Comp. Stat. 14/10 (defining "biometric information").

Notably, even if Defendant contends that the DiF Dataset does not contain Biometric Data, the contention raises a common question with a common answer. *See Jammeh*, 2020 WL 5407864, at *20 (the defendant's proffered defense "is an issue that could be decided on a class-wide basis"). As such, the contention would support a finding of predominance as it could be resolved for every class member "in one stroke." *See id.*; *Dukes*, 564 U.S. at 350.

> **b.    Defendant did not Provide the Requisite Notice to Class Members Under § 15(b), nor did It Receive the Requisite Consent.**

BIPA § 15(b) requires private entities that collect Biometric Data to inform the subject or the subject's legally authorized representative of the data in writing: (a) that the data "is being collected or stored"; and (b) "of the specific purpose and length of term for which the data is being collected, stored, and used." 740 Ill. Comp. Stat. 14/15 (b)(1)-(2). Further, § 15(b) requires such a

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 11

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

private entity to receive a written release from the subject or the subject's legally authorized representative. 740 Ill. Comp. Stat. 14/15(b)(3). BIPA defines a "written release" as "informed written consent." 740 Ill. Comp. Stat. 14/10.

It is undisputed that Defendant neither provided the requisite notice nor received the requisite consent before obtaining Class Members' Biometric Data. *See* Ex. 13 (Defendant's Supp. Interrog. Ans.) at No. 3 (setting forth reasons Defendant did not comply with BIPA); Ex. 19 (Defendant's Interrog. Ans.) at No. 4 (attempting to explain why Defendant was not required to provide notice and obtain consent). Because Defendant did not provide any notice or receive any consent prior to obtaining the biometric identifiers and information of Class Members, the Court can resolve this issue in one stroke.

### 2.   Common Issues Predominate with Respect to the Unjust Enrichment Claim.

To state an unjust enrichment claim under Illinois law, *see* Dkt. 47 (Court Order) at 20 (finding Illinois law applies), a plaintiff must show that the "[defendant] has unjustly retained a benefit to [the plaintiff's] detriment and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Mabry v. Standard Indus., Inc.*, No. 20-cv-376, 2020 WL 2112372, at *5 (N.D. Ill. May 4, 2020). As discussed above, Defendant obtained Class Members' Biometric Data without consent – *i.e.*, Defendant unjustly obtained and retained the benefit of acquiring the Biometric Data and harmed Class Members by exposing them to a heightened risk of privacy harm and depriving them of control over their Biometric Data. *See* Dkt. 43 (3/15/2021 Order) at 21-22; 740 Ill. Comp. Stat. 14/5(c) (describing privacy harms from compromised biometrics); *Rosenbach v. Six Flags Entertainment Corp.*, 159 N.E.2d 1197, 1206 (2019) (BIPA codifies "that individuals possess a right to privacy in and control over their biometric identifiers and biometric information."). In doing so, Defendant violated the fundamental principles of justice, equity, and good conscience.

As with the BIPA § 15(b) claim, the Court can resolve all of the issues related to unjust enrichment in a single stroke. To the extent Defendant contends it did not benefit from its

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 12

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

obtainment of the biometric data, Defendant would again be raising a common question with a common answer. *See Jammeh*, 2020 WL 5407864, at *20; *Dukes*, 564 U.S. at 350. As such, the contention would favor a predominance finding.

\*   \*   \*

As demonstrated above, multiple common questions that lead to common answers predominate. Accordingly, the commonality and predominance factors under Rule 23(a)(2) and (b)(3), respectively, are satisfied.

### C.   Steven Vance and Tim Janecyk Are Typical of the Proposed Classes

Rule 23(a)(3) requires that the "claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The "'commonality and typicality requirements of Rule 23(a) tend to merge.'" *Rosario v. U.S. Citizenship and Immig. Svcs.*, No. C15-0813JLR, 2017 WL 3034447, at *10 (W.D. Wash. July 18, 2017) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)). In analyzing typicality, courts consider the following: (a) whether absent class members' injuries are the same or similar as the named plaintiffs; (b) whether conduct giving rise to the action is not unique to the named plaintiffs; (c) whether absent class members have been injured by the defendant's same course of conduct. *Id.* at *10. "A named plaintiff who is subject to the same defense as other class members is typical." *Jammeh*, 2020 WL 5407864, at *14.

As threshold matters, Plaintiffs are longtime Illinois residents, and the DiF Dataset contains lines with URLs linking to each Plaintiff's facial image, along with the related extracted Biometric Data. *See* Ex. 8 (Vance Supp. Interrog. Ans.) at No. 4; Exhibit 9 (Vance Dep. Tr.) at 9:15-10:9, 69:20-70:11, 74:2-74:4, 153:4-16; Exhibit 10 (Janecyk Supp. Interrog. Ans.) at No. 4; Exhibit 11 (Janecyk Dep. Tr.) at 100:4-10, 150:12-24; *see also* Ex. 1 (Merler Dep. Tr.) at 78:24-79:9 (describing information in each line of DiF Dataset); Ex. A (Drury Decl.) ¶ 3. Moreover, all Class Members have suffered the same injuries as Plaintiffs, namely, Defendant invaded all Class Members' private domains, much like an act of trespass, when it obtained their Biometric Data

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 13

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

without their consent. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020). As the Seventh Circuit has found, the "judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy or economic harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they relinquish control of that information." *Id.* at 626. Defendant denied Plaintiffs and Class Members the opportunity to make those choices. *See id.*

Further, as discussed throughout, this action is based on conduct that is not unique to Plaintiffs – Defendant's obtainment of Plaintiffs' and Class Members' Biometric Data without providing the requisite notice or receiving the requisite consent. Similarly, Plaintiffs and Class Members have all been injured by this very same course of conduct. Finally, Plaintiffs are not preoccupied with defenses unique to them. The defenses thus far asserted by Defendant apply equally to all Class Members. *See* Dkt. 25 (Motion to Dismiss). Based on the above, Plaintiffs are typical of the proposed Classes.

### D.      Plaintiffs Will Fairly and Adequately Represent the Classes.

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts have interpreted the Rule to also require that the proposed class counsel be adequate to represent the proposed class. *Hanlon*, 150 F.3d at 1021. "Resolution of two questions determines legal adequacy: (1) do the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* Plaintiffs and proposed class counsel satisfy Rule 23(a)(4)'s requirements.

### 1.      The Named Plaintiffs Are Adequate.

Plaintiff Vance and Plaintiff Janecyk will adequately represent the proposed Classes. Plaintiffs have the same interest in protecting their Biometric Data and enforcing their privacy rights as all Class Members; there are no conflicts or potential conflicts of interest. As discussed above, Defendant's conduct harmed each class member in the same manner; this is not a case

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

where some class members have claims of different strength than others. *Cf. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997).

Moreover, Plaintiffs have demonstrated their commitment to vigorously prosecuting this matter on behalf of all Class Members. *See* Ex. A (Drury Decl.) ¶ 4; Ex. B (Lange Decl.) ¶ 2; Ex. 9 (Vance Dep. Tr.) at 50:7-10, 53:4-9, 84:6-12, 102:8-17, 108:12-109:2, 192:9-14, 223:20-224:3, 238:21-239:2, 250:9-251:21; Ex. 11 (Janecyk Dep. Tr.) at 17:22-18:1, 43:4-44:2, 134:5-7, 134:15-135:5, 143:10-144:7, 149:9-15, 173:2-11, 182:17-183:20, 196:7-9. Each Plaintiff has prepared for and sat for a lengthy deposition, timely responded to numerous written discovery requests, produced documents, followed the progress of the litigation, and timely cooperated with counsel concerning requests to provide any assistance otherwise required to prosecute this case. Ex. A (Drury Decl.) ¶ 4; Ex. B (Lange Decl.) ¶ 2; *see* Ex. 9 (Vance Dep. Tr.) at 50:7-10, 53:4-9, 84:6-12, 102:8-17, 108:12-109:2, 192:9-14, 223:20-224:3, 238:21-239:2, 250:9-251:21; Ex. 11 (Janecyk Dep. Tr.) at 17:22-18:1, 43:4-44:2, 134:5-7, 134:15-135:5, 143:10-144:7, 149:9-15, 173:2-11, 182:17-183:20, 196:7-9; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 595 (N.D. Cal. 2010) ("Here, the plaintiffs have searched for products and documents, provided answers to written discovery, given deposition testimony, and followed the progress of this litigation through communication with counsel, and have demonstrated their ability to serve as class representatives.").

### 2.    Proposed Class Counsel Are Adequate.

Each Plaintiff has retained experienced and sophisticated counsel who have vigorously prosecuted, and will continue to vigorously prosecute, this action on behalf the proposed Classes. Moreover, proposed class counsel do not have any conflicts of interest.

Steven Vance has retained Scott R. Drury and the law firm of Loevy & Loevy ("Loevy"). Mr. Drury is the founder and leader of Loevy's Data Privacy and Cyber-Intelligence Group. Mr. Drury recently was appointed Plaintiffs' sole interim lead class counsel in the consolidated multidistrict litigation captioned *In re Clearview AI, Inc., Consumer Privacy Litig.*, No. 21 C 0135, 2021 WL 916056 (N.D. Ill. Mar. 10, 2021). Like here, that litigation relates in substantial part to

alleged violations of BIPA. *See id.* at *2. In making the appointment, the court found that "Drury's superior knowledge of BIPA weighs heavily in favor of appointing Drury as interim lead counsel" and that "it is abundantly clear that Drury will best be able to represent the interests of all of the class members." *Id.* Similarly, Loevy has been appointed Plaintiffs' co-lead interim class counsel (along with Janecyk's counsel) in the matter of *Vance v. Int'l Business Machines Corp.* ("*IBM*"), No. 20 C 577 (N.D. Ill.). Exhibit 20 (*IBM* Rule 23(g) Order). As here, that matter arises out of the alleged unlawful collection, capture and obtainment of Biometric Data in connection with the DiF Dataset. Exhibit A (Drury Decl.) ¶ 5. Mr. Drury is the Loevy attorney primarily responsible for the *IBM* matter. Mr. Drury is a former Assistant United States Attorney for the Northern District of Illinois, and he currently is an Adjunct Professor of Law at the Northwestern Pritzker School of Law, where he teaches trial advocacy.

Loevy has recovered nearly $200 million for classes, including a $76 million TCPA settlement (which, at the time, was the largest in history); $107 million in civil rights/insurance coverage settlements; and a $16.5 million civil rights settlement. Loevy's class action experience is unique in that the firm has tried class actions to verdict. The firm's work also has received high judicial praise. *See Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017) (noting the Firm's expertise in conducting class action trials and stating "that counsel provided exceptional representation for the class and produced high-value output") (internal quotation omitted); *see also* Exhibit 21 (Loevy Firm Resume).

Tim Janecyk has retained Katrina Carroll and the law firm of Carlson Lynch LLP. Katrina Carroll is the managing partner of Carlson Lynch's Chicago office, has recovered well over $1 billon on behalf of class members, and currently serves as court-appointed Co-Lead Counsel in *In Re: TikTok, Inc., Consumer Privacy Litig.*, No. 1:20-cv-04699, MDL No. 2948 (N.D. Ill.), where Judge Lee recently issued preliminary approval for a $92 million settlement resolving class members' BIPA and other privacy claims. Ms. Carroll also has experience in numerous BIPA cases, including, to name a few: *Monroy v. Shutterfly, Inc.*, 1:16-cv-10984, (N.D. Ill.) and *Rivera v. Google*, 1:16-cv-02714 (N.D. Ill.), two of the earliest BIPA cases that have shaped BIPA

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 16

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

jurisprudence. She is also currently pursuing a myriad of other BIPA-centered litigation. *See Whalen v. Facebook, Inc.*, 4:20-cv-06361 (N.D. Cal.); *Cotton v. Ring LLC*, 1:20-cv-02479 (N.D. Ill.); *Robinson v. Petco Animal Supplies, Inc.*, No. 21-CH-273 (Cir. Ct. Cook Cnty.); *Garcia v. Sarpino's USA, Inc.*, 21-CH-398 (Cir. Ct. Cook Cnty.); *Barton v. Walmart Inc.*, 1:21-cv-4329 (N.D. Ill.); *Coons v. Yum! Brands, Inc.*, 3:21-cv-45 (S.D. Ill.); *Hendricks v. GoBrands, Inc.*, 21-L-60 (Cir. Ct. Sangamon Cnty.).

Ms. Carroll's class action experience is not limited to privacy and BIPA issues. In *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, 1:15-cv-1364 (N.D. Ill.), a complex product liability MDL where Ms. Carroll served as Co-Lead Counsel and obtained a significant class settlement, the Honorable Amy J. St. Eve, now a sitting judge of the Seventh Circuit Court of Appeals, praised Ms. Carroll's professionalism as a "model I wish all lawyers would follow."

Ms. Carroll's firm, Carlson Lynch LLP, is a nationally recognized class action law firm with offices located in Pittsburgh, San Diego, Los Angeles, and Chicago, specializing in an array of complex class actions, including financial fraud, data breach, privacy, consumer fraud, labor and employment, antitrust, civil rights, and wage and hour laws. Carlson Lynch has a wealth of experience in some of the largest privacy class actions pending around the country, including those arising from violations of BIPA. Since 2004, the attorneys of Carlson Lynch have generated seminal legal authority in trial and appellate courts, litigated every type of class action across the county, and recovered substantial monetary awards and injunctive relief on behalf of class members. *See* Ex. B (Lange Decl.) at Exhibit 1 thereto (Carlson Lynch Firm Resume).

Notably, from the beginning, Plaintiffs' counsel have worked harmoniously on behalf of Plaintiffs and Class Members. As a result, no time or effort has been wasted on "leadership battles," and the full focus has been on obtaining the best results possible Class Members.

\*    \*    \*

Plaintiffs and proposed class counsel satisfy the adequacy requirement of Rule 23(a)(4).

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 17

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

**E.     A Class Action Is Superior to Other Available Methods of Adjudication.**

Because Plaintiffs seek certification under Rule 23(b)(3), they are required to show that a "class action is superior to other available methods for fairly and adequately adjudicating the controversy."[5] Fed. R. Civ. P. 23(b)(3). The matters pertinent to a finding of superiority include:

(A)     the class members' interests in individually controlling the prosecution . . . of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by . . . class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and

(D)     the likely difficulties in managing a class action.

*Id.* In general, the superiority factor weighs in favor of certifying a class action if the damages suffered by putative class members are not large. *See Jammeh*, 2020 WL 5407864, at *22. Here, each factor weighs in favor of certification.

**1.     Class Members Will Not Pursue Individual Actions.**

The first factor, class members' interests in prosecuting separate actions, favors certification. "While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs given the high costs" of litigating disputes of this nature. *See In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). BIPA provides for liquidated damages of $1,000 or $5,000, depending on whether a Defendant acted negligently or recklessly in violating the statute.[6] 740 Ill. Comp. Stat. 14/20(1)-(2). Here, available damages to any individual Class Member are far exceeded by incurred and anticipated litigation costs, which will include the need for expert

---

[5] Plaintiffs have addressed Rule 23(b)(3)'s "predominance" requirement in § II.B.1 *supra*.

[6] While BIPA also allows for actual damages to the extent they exceed liquidated damages, *see* 740 Ill. Comp. Stat. 14/20(1)-(2), Plaintiffs presently anticipate that liquidated damages will exceed provable actual damages. At present, Plaintiffs' counsel are not aware of information showing that a potential class member has provable actual damages in excess of the liquidated damages of $1,000 or $5,000 provided by BIPA. Ex. A (Drury Decl.) ¶ 7. Even if the Court had to determine the amount of damages, that inquiry does not preclude certification. *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) (determination of the amount of damages is an individual question that does not defeat certification).

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 18

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

analysis of the source code underlying the DiF Dataset and Defendant's commercial facial recognition productions, as well as expert testimony. Ex. A (Drury Decl.) ¶ 6. As such, an individual class member would not choose to litigate this matter on his/her own.

## 2.   No Related Proceedings Have Been Filed Against Defendant and Litigating in This Forum Is Desirable.

The second and third factors, the extent and nature of other proceedings and the desirability or undesirability of concentrating the litigation in this forum, further favor certification. This is the only lawsuit arising out of Defendant's unlawful obtainment of Biometric Data in connection with the DiF Dataset. Moreover, Defendant's headquarters is located in this District, making the forum desirable.

## 3.   This Case Is Manageable as a Class Action.

Finally, this case is manageable as a class action. As discussed above, the Court can resolve the elements of Class Members' claims by common evidence, and common questions of fact and law predominate. Nevertheless, Plaintiffs anticipate that Defendant will speculate that it will not be administratively feasible to identify Class Members, calculate individual damages and distribute damages.

### a.   Administrative Feasibility Is Not a Rule 23 Factor.

The Ninth Circuit has rejected the argument that administrative feasibility is a prerequisite to class certification. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). An administrative feasibility requirement would invite the courts to consider the administrative burdens of class litigation "in a vacuum." *Id.* at 1128 (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)). Thus, such consideration of an administrative feasibility requirement would be improper where "administrative feasibility would be difficult to demonstrate but in which there may be no realistic alternative to class treatment." *Id.* Here, class resolution is superior simply because it is the only way to realistically obtain any benefit for the Classes.

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

### b.   Concerns Regarding Identifying Class Members Should Not Prevent Certification.

Any concerns regarding the identification of class members should not prevent class certification. Just as Rule 23 does not contain a general administrative feasibility requirement, nor does it provide or imply "that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno*, 844 F.3d at 1133; *see also Etter v. Allstate Ins. Co*., 323 F.R.D. 308, 314 (N.D. Cal. 2017) ("our court of appeals recently held that class certification does not require an administratively feasible way to identify members of the class"). Instead, the manageability of the case as a class action – including the ability of, and/or method for, class members to identify themselves – is simply one aspect of the superiority analysis, and "'courts should not refuse to certify a class merely on the basis of manageability concerns.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2019 WL 4854849, at *8 (C.D. Cal. Oct. 1, 2019), *appeal withdrawn*, No. 19-80139, 2019 WL 7576695 (9th Cir. Nov. 18, 2019) (quoting *Briseno*, 844 F.3d at 1128).

Regardless, Plaintiffs have identified objective criteria for identifying class members and proposed multiple ways potential class members may reliably identify themselves. *See Melgar v. CSK Auto, Inc.*, 681 Fed. Appx. 605, (9th Cir. 2017) ("the district court did not abuse its discretion by certifying a class with a self-certification process for absent class members") (citing *Briseno*, 844 F.3d at 1121); *Melgar v. CSK Auto, Inc.*, No. 13-cv-03769, 2015 WL 9303977, *8 (N.D. Cal. Dec. 22, 2015) (rejecting contention that self-identification is unreliable process and noting "courts in this circuit [have] found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits.").

Members of the Classes who uploaded photographs to Flickr can be readily identified by their unique Flickr ID. As evidenced by Dr. Merler's testimony, the Flickr users who uploaded the photographs to which the DiF Dataset links can be grouped and identified by their unique Flickr identification number. Ex. 1 (Merler Dep. Tr.) at 28:4-13, 39:3-25, 74:2-75:11, 115:19-117:17. Once the individual Flickr users are identified by identification number, myriad ways of providing

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 20

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

notice exist, including by visiting the Flickr user's Flickr page. *See, e.g.,* Ex. 9 (Vance Dep. Tr.) at 231:15-233:14.

Further, every URL link in the DiF Dataset also appears in the Flickr Dataset, which – for every link in the DiF Dataset – also contains a "live" link to the image as it appears on Flickr. *See* Ex. 1 (Merler Dep. Tr.) at 21:23-25:13, 35:8-36:13, 36:17-37:13, 42:3-43:6, 46:5-19, 115:19-117:17; Ex. 3 (Flickr ReadMe File) at 2.[7] Anyone with access to the live Flickr link can visit Plaintiff Vance's Flickr page (or any other user for which the person has a live link) and contact him via the in-app messaging tool.[8] Alternatively, Flickr can send in-app notifications or similar forms of direct notice to every member of the Classes who uploaded a photograph to Flickr that appears in the DiF Dataset.

However it is done, the notice would identify each of the Flickr user's photographs in the DiF Dataset and require interested members of the Classes to confirm their Illinois residency, submit a claim form, or provide any appropriate documentation. Moreover, the Flickr pages for all Flickr users may provide additional contact information.  For instance, Plaintiff Janecyk lists his personal email address and Plaintiff Vance provides various ways to contact him, including a link to his personal webpage that contains his email address.[9]

Yet another method to identify members of the Classes who uploaded their DiF photographs to Flickr is to use a publicly-available search tool that will allow them to search for their photographs in the DiF Dataset by their Flickr ID or Flickr username. Indeed, Plaintiffs used

---

[7] For example, the DiF Dataset includes a URL link to one of Plaintiff Vance's photographs as http://farm1.staticflickr.com/13/16359121_06ac7e0ee7.jpg. Ex. 9 (Vance Dep. Tr.) at 125:12-17, 134:10-135:10; Ex. A (Drury Decl.) ¶ 3. The Flickr Dataset contains both this link *and* the live Flickr link taking viewers to the photograph as it appears on Plaintiff Vance's full Flickr page: https://www.flickr.com/photos/jamesbondsv/16359121/. *See* Ex. 1 (Merler Dep. Tr.) at 36:21-38:15, 42:3-43:10; *see also* Exhibit 22 (Flickr Dataset Sample).

[8] There are multiple other ways to identify members of Class One and their Flickr pages. For instance, without consulting the Flickr Dataset, the parties can convert the static links in the DiF Dataset by pasting the photo ID number (16359121 in the preceding example) from URL in the dataset into the following URL: http://flickr.com/photo.gne?id=[Photo Id]. *See https://www.bram.us/2008/01/12/my-priceless-flickr-tip-how-to-find-the-original-flickr-photo-url-and-user-from-a-static-flickr-image-url/* (last accessed October 7, 2021).  In this example, the converted link is: http://flickr.com/photo.gne?id=16359121.

[9] *See* Plaintiff Janecyk's public profile at https://www.flickr.com/photos/light_seeker/ and Plaintiff Vance's at *https://www.flickr.com/people/jamesbondsv/* .

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

this method to determine that photographs they uploaded to Flickr were included in the DiF Dataset. Ex. 9 (Vance Dep. Tr.) at 66:24-69:14, 253:13-254:18; Ex. 11 (Janecyk Dep. Tr.) at 12:8-16; *see, e.g.* Exhibits 23-24 (Screenshots of Search Tool). The parties can engage an online notice campaign to advise the public of this lawsuit and direct them to a search tool such as the tool NBC provides to the public to determine whether their photographs are in the DiF Dataset,[10] or they can create their own search tool. To use the search tool, members of the public need only submit their Flickr username or Flickr ID. The search tool would then confirm whether photographs the user uploaded to Flickr are linked to in the DiF Dataset. When a match is confirmed, the potential members of the Classes may contact the parties to view their photographs to which the DiF Dataset links and confirm their inclusion in the photographs.

Class Members who did not upload photographs to Flickr that they appear in are likewise identifiable. First, these members of the Class necessarily appear in photographs uploaded by a Flickr user who is a Class Member. Thus, once Class Members who uploaded their photographs are identified, notices can be provided to them that ask them to forward the claim form to any other Illinois residents they can identify in their photographs or to provide the non-users' contact information to the parties for direct notice to the non-user.

Alternatively, with the informed, written consent of members of the public and in compliance with BIPA's requirements, the parties can employ facial recognition technology to allow members of the public to submit images of themselves to determine if their face image appears in a photograph to which the DiF Dataset links. Exhibit 25 (Declaration of Atif Hashmi). To the extent there is a match, Class Members can self-identify and submit a claim form or other documentation.

To the extent a potential member of the Class who did not upload the DiF photograph they appear in does not wish to consent to the use of facial recognition technology, the potential member can instead view an online collection of the photographs to which the DiF Dataset links to

---

[10] *See* https://www.nbcnews.com/tech/internet/facial-recognition-s-dirty-little-secret-millions-online-photos-scraped-n981921 (last accessed October 7, 2021).

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

determine if his/her facial image appears therein. To assist with the search, the potential Class Member would be able to search for images by Flickr username or Flickr ID. Thus, if a potential member of the Class is aware of someone who may have uploaded a photo of the potential Class Member, he/she can narrow the list of images that have to be viewed.

### c.   The Parties Can Estimate Class Size and Calculate Damages.

Any claim that damages cannot be calculated is misplaced. As discussed above, Plaintiffs anticipate that the liquidated damages provisions of BIPA will control. Those damages are not dependent on proof of actual injury. Moreover, as discussed above, even if individual inquires are necessary, that does not defeat class certification. *See Yokoyama*, 594 F.3d at1093.

While the amount of available liquidated damages depends on whether Defendant acted negligently or recklessly, that determination will apply to all Class Members and can be determined in a single stroke. Thus, no manageability issues exist in that respect. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990).

Similarly, the Parties can estimate class size through available data. For example, geolocation data exists for approximately half of the photographs to which the DiF Dataset links. Based on that data, an estimate can be made as to the total number of photographs to which the DiF Dataset links that were taken in Illinois. *See, supra,* § II.A.

### d.   Notice Can Be Provided and Damages Can Be Distributed.

For the reasons discussed in the section above addressing identification of Class Members, providing notice to Class Members also will not pose manageability issues. Rule 23 only requires the "best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort.*" *See* Fed. R. Civ. P. 23(c)(2)(B) (emphasis added); *Briseno*, 844 F.3d at 1128-29.

Relatedly, any concerns regarding distribution of damages should not preclude certification at this early stage because the parties can structure damages to avoid distribution issues. Any recovery can be evenly distributed to Class Members who do not opt out or submit a claim based

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 23

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

on the number of class members. In the event of a surplus, the surplus recovery can be distributed pro rata among claimants. Regardless, distribution problems are not ripe now and should await the trial phase of this case. *See Six (6) Mexican Workers*, 904 F.2d at 1306 ("To the extent that the procedure may yield a substantial distribution of the funds, the manageability issue is not yet ripe.")

Given that individual actions are not realistic, *see* discussion, *supra*, a class action is the superior and only viable method of achieving that objective. *See id*.

## CONCLUSION

For the foregoing reasons, the Court should certify the proposed Classes, appoint Steven Vance and Tim Janecyk to represent the Classes, and appoint Carlson Lynch LLP and Loevy & Loevy as Class Counsel.

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 24

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902

1  DATED: October 7, 2021                    By: *s/ Scott R. Drury*

2                                            David B. Owens, WSBA #52856
                                             LOEVY & LOEVY
3                                            100 S. King Street, Suite 100
                                             Seattle, WA  98104
4                                            Telephone: (312) 243-5900
                                             Fax: (312) 243-5092
5                                            Email:  david@loevy.com

6
                                             Scott R. Drury, Admitted *pro hac vice*
7                                            Mike Kanovitz, Admitted *pro hac vice*
                                             LOEVY & LOEVY
8                                            311 N. Aberdeen, 3rd Floor
                                             Chicago, IL  60607
9                                            Telephone: (312) 243-5900
                                             Email:  drury@loevy.com
10                                           Email:  mike@loevy.com

11
                                             By: */s/ Nicholas R. Lange*
12                                           Katrina Carroll, Admitted *pro hac vice*
13                                           Nicholas R. Lange, Admitted *pro hac vice*
                                             CARLSON LYNCH LLP
14                                           111 West Washington Street, Suite 1240
                                             Chicago, Illinois 60602
15                                           Telephone: (312) 750-1265
                                             Email:  kcarroll@carlsonlynch.com
16                                           Email:  nlange@carlsonlynch.com

17
                                             Gary Lynch, Admitted *pro hac vice*
18                                           CARLSON LYNCH LLP
19                                           1133 Penn Avenue, Floor 5
                                             Pittsburgh, PA  15222
20                                           Telephone: (412) 322-9243
                                             Email:  glynch@carlsonlynch.com

21                                           ***Attorneys for Plaintiffs***

22

23

24

25

26

27

PLAINTIFFS' MOTION TO CERTIFY CLASS
(2:20-cv-01082-JLR) - 25

LOEVY & LOEVY
100 S. King Street., #100
Seattle, Washington 98104
T: 312-243-5900; Fax: 312-243-5902