1

THE HONORABLE JAMES L. ROBART

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9

STEVEN VANCE, *et al.*,
10
                                        Plaintiffs,          No. 2:20-cv-01082-JLR

11
        v.                                                   **DEFENDANT MICROSOFT
12                                                           CORPORATION'S MOTION FOR
                                                             SUMMARY JUDGMENT**
13
MICROSOFT CORPORATION,
14                                      Defendant.           **NOTE ON MOTION CALENDAR:**
                                                             January 14, 2022
15
                                                             **ORAL ARGUMENT REQUESTED**
16

17

18

19

20

21

22

23

24

25

26

27

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

UNDISPUTED MATERIAL FACTS ............................................................................... 3

    A.    Flickr and the Yahoo-Created YFCC100M Dataset ............................ 3

    B.    The IBM-Created DiF Dataset.............................................................. 4

    C.    Plaintiffs' Flickr Photos ...................................................................... 5

    D.    Microsoft Contractor Benjamin Skrainka's Download of the IBM DiF Dataset.................................................................................................... 6

    E.    Microsoft Student Intern Samira Samadi's Download of the IBM DiF Dataset.................................................................................................... 8

ARGUMENT .................................................................................................................. 10

I.    Illinois' BIPA Statute Does Not—and Cannot Constitutionally—Apply to Microsoft's Out-of-State Activities. ................................................................... 10

    A.    BIPA Does Not Apply Extraterritorially and Microsoft Did Not Engage in Conduct "Primarily and Substantially" in Illinois. ............................. 11

        1.    The Undisputed Facts Confirm Microsoft's Conduct Occurred Entirely Outside Illinois............................................................. 11

        2.    Microsoft's Alleged BIPA Violation Had No Connection to Illinois ..... 13

        3.    Plaintiffs' Illinois Residency Alone Cannot Satisfy Illinois' Extraterritoriality Doctrine........................................................ 15

    B.    Applying BIPA to Microsoft's Out-of-State Conduct Here Would Violate the Dormant Commerce Clause. ......................................................... 17

        1.    Plaintiffs May Not Use BIPA to Regulate Conduct Occurring Entirely Outside of Illinois' Borders....................................... 18

        2.    BIPA's Application Here Would Conflict with Washington and New York Biometric Privacy Law. ...................................... 19

II.    The Court Should Grant Summary Judgment on the Unjust Enrichment Claim............ 21

CONCLUSION............................................................................................................... 23

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - i
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chinatown Neighborhood Ass'n v. Harris*,
   794 F.3d 1136 (9th Cir. 2015) ...................................................................18

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) ....................................................................22

*Cousineau v. Microsoft Corp.*,
   992 F. Supp. 2d 1116 (W.D. Wash. 2012).................................................22

*Daniels Sharpsmart, Inc. v. Smith*,
   889 F.3d 608 (9th Cir. 2018) .........................................................17, 18, 19

*David K. Lindemuth Co. v. Shannon Fin. Corp.*,
   637 F. Supp. 991 (N.D. Cal. 1986) ...........................................................15

*Healy v. Beer Institute, Inc.*,
   491 U.S. 324 (1989)...................................................................................18

*Hernandez v. Spacelabs Med. Inc.*,
   343 F.3d 1107 (9th Cir. 2003) ...................................................................13

*Hesketh v. Total Renal Care, Inc.*,
   2021 WL 5761610 (W.D. Wash. Dec. 3, 2021) (Robart, J.) .....................10

*Iancu v. Brunetti*,
   139 S. Ct. 2294 (2019)...............................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)...................................................................................10

*Mazza v. Am. Honda Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) .....................................................................20

*McGoveran v. Amazon Web Services, Inc.*,
   2021 WL 4502089 (D. Del. Sept. 30, 2021).......................................*passim*

*Monroy v. Shutterfly*,
   2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ......................................16, 17

*Nat'l Collegiate Athletic Ass'n v. Miller*,
   10 F.3d 633 (9th Cir. 1993) .......................................................................20

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - ii
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ..................................................................................3

*Rivera v. Google*,
   238 F.Supp.3d 1088 (N.D. Ill. 2017) .......................................................................16

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) .........................................................................18, 19

*Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*,
   2013 WL 1337303 (N.D. Ill. Mar. 29, 2013)..........................................................16

*United States v. Pappadopoulos*,
   64 F.3d 522 (9th Cir. 1995), *abrogated on other grounds by Jones v. United
   States*, 529 U.S. 848 (2000) ...................................................................................18

*Vulcan Golf, LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) .......................................................................16

**State Cases**

*Corsello v. Verizon New York, Inc.*,
   967 N.E.2d 1177 (N.Y. 2012)..................................................................................22

*Landau v. CNA Fin. Corp.*,
   886 N.E.2d 405 (Ill. App. 2008) ..............................................................................11

*People v. Scheib*,
   390 N.E.2d 872 (Ill. 1979) .......................................................................................11

**State Statutes**

740 ILCS 14 ...................................................................................................... *passim*

740 ILCS 14/5(b) ....................................................................................................11

740 ILCS 14/15(b) ............................................................................................ *passim*

New York City Code § 22-1201 .............................................................................20

New York City Code § 22-1202 .............................................................................20

RCW 19.375 .......................................................................................................1, 19

RCW 19.375.010(1)................................................................................................19

RCW 19.375.010(4)................................................................................................19

RCW 19.375.020 ....................................................................................................19

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - iii
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

RCW 19.375.020(1) ........................................................................................................19

2

RCW 19.375.101(5) ........................................................................................................19

3

**Rules**

4

Fed. R. Civ. P. 23 ...........................................................................................................23

5

Fed. R. Civ. P. 56(a) ......................................................................................................10

6

**Constitutional Provisions**

7

U.S. Constitution Commerce Clause ..............................................................................17

8

**Other Authorities**

9

10

Bart Thomee et al., "YFCC100M: The New Data in Multimedia Research," ..............................3

11

Communications of the ACM, 59(2), 2016, at 66,
      https://dl.acm.org/doi/pdf/10.1145/2812802 ........................................................3, 4

12

13

Creative Commons, About The Licenses, https://creative commons.org/licenses/ .............3, 5, 14

14

Flickr, How to Change Your License on Flickr https://www.flickrhelp.com/hc/en-
      us/articles/4404078674324-Change-Your-Photo-s-License-in-Flickr (accessed
      Dec. 6, 2021) .........................................................................................................3

15

16

State of Delaware, Department of State: Division of Corporations, Business
      Search Results for Flickr Inc. and Yahoo, Inc.,
      https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx
      (accessed Dec. 6, 2021) ...........................................................................................3

17

18

19

20

21

22

23

24

25

26

27

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - iv
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## INTRODUCTION

In February 2019, Microsoft downloaded the IBM Diversity in Faces Dataset ("DiF Dataset"), a dataset of publicly available photos (and related data) from around the world that, without Microsoft's knowledge, apparently contained links to photos of Illinois residents. Microsoft downloaded the Dataset from Washington and New York, quickly determined it was not useful, and did not use it—for anything.  This action presents the question whether Microsoft, a Washington-based company, can be held liable for statutory damages under the Illinois Biometric Information Privacy Act ("BIPA"), even though it took no action in Illinois and had no knowledge that any photos or data regarding Illinois residents may have been in the Dataset.  The answer is no.  BIPA does not apply to Microsoft because it did not engage in the conduct that allegedly violated BIPA "primarily and substantially" in Illinois, as Illinois law requires.  To hold otherwise would also violate the dormant commerce clause, as BIPA conflicts with the Washington Biometric Privacy Law and the law in New York—the states in which Microsoft did download the Dataset.  And having done nothing with the Dataset, Microsoft was not unjustly enriched by it.  The Court should grant summary judgment for Microsoft.[1]

The IBM DiF Dataset is a large and diverse dataset of human faces that IBM, a New York company, created in New York to advance the study of fairness, accuracy, and bias in facial recognition technology.  The DiF Dataset contains links to roughly 1 million publicly available photos taken all over the world, as well as annotations of data regarding some (but not all) of the faces in the photos.  In early 2019, IBM offered its DiF Dataset to approved researchers, free of charge, for use in research only.  One Microsoft contractor and one Microsoft post-graduate student intern each downloaded the DiF Dataset, using an online link from IBM, from Washington and New York respectively.  Each did so to determine if the photos linked to in Dataset (not the data) would be useful in their research; each briefly evaluated some of the linked

---

[1] Microsoft has concurrently filed its opposition to Plaintiffs' motion for class certification.  If the Court grants this motion for summary judgment, it need not reach Plaintiffs' motion for class certification.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 1
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  photos in the Dataset; and each decided the Dataset didn't meet their respective research needs.

2  Neither used the Dataset, nor shared it with anyone else.

3      Illinois residents Steven Vance and Tim Janecyk allege Microsoft (a) violated BIPA

4  Section 15(b) merely by downloading the IBM DiF Dataset in Washington and New York

5  without their consent—even though Microsoft could not have known their faces were in it; and

6  (b) was allegedly unjustly enriched by downloading and allegedly profiting from its use of

7  Plaintiffs' biometric identifiers and information.  The Court denied Microsoft's motion to

8  dismiss, concluding "more factual refinement" about "the circumstances around Microsoft's

9  attainment, possession and use of the Diversity in Faces dataset" was needed.  Dkt. 43 at 8.

10      On the now-developed and undisputed facts, the Court should grant Microsoft summary

11  judgment for the following reasons:

12      *First*, under settled Illinois law, BIPA does not apply extraterritorially here because

13  Microsoft did not engage in any action in Illinois, much less "primarily and substantially" in

14  Illinois, as the law requires.  Microsoft did not download Plaintiffs' alleged biometrics in Illinois,

15  did not use the Dataset or any information in it for any purpose anywhere, could not have known

16  Plaintiffs' purported biometrics were in the Dataset, and did not have any reason to know the

17  Dataset may contain links to Illinois residents' photos, much less biometric identifiers.  Plaintiffs

18  ask the Court to adopt an absurd and untenable application of BIPA—one that would subject a

19  defendant to statutory damages based solely on a brief interaction with *some* of the *photos* (and

20  none of the alleged biometric data) in IBM's DiF Dataset, all *entirely* outside Illinois.

21      *Second*, even if the information in the DiF Dataset were biometric information or

22  identifiers, Microsoft did not use that (or any other) information at all—so Plaintiffs have no

23  unjust enrichment claim.  Neither the contractor nor the intern reviewed or had any interest in the

24  annotations in the IBM DiF Dataset, and neither shared the Dataset with anyone else.  Microsoft

25  simply received no "benefit" or "profit" from Plaintiffs' biometric information or identifiers, and

26  the Court should dismiss their unjust enrichment claim.

27

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 2
(Case No. 2:20-cv-01082-JLR)

## UNDISPUTED MATERIAL FACTS

### A.   Flickr and the Yahoo-Created YFCC100M Dataset

Flickr is a photo sharing website that allows users to upload and share photos with others online.  Compl. ¶ 28.  Between at least 2004 and 2014, Flickr users could choose to upload their photos under either an "All Rights Reserved" license or a "Creative Commons" license."[2]  Under the former, the Flickr user retained the right to make copies and distribute their uploaded photos.  *Id.*  Under the latter, the Flickr user consented to the ability of third parties to copy, distribute, edit, and use the photos.[3]  The purpose of a Creative Commons license is to create a "digital commons, a pool of content that can be copied, distributed, edited, remixed, and built upon, all within the boundaries of copyright law." *Id.*

In 2014, Yahoo!—Flickr's then-parent[4]—released to the public a dataset of about 100 million Flickr photos uploaded to Flickr's website between 2004 and 2014.[5]  The Yahoo-created dataset became known as "the Yahoo Flickr Creative Commons 100 Million Dataset (YFCC100M)."[6]  The YFCC100M dataset "is the largest public multimedia collection that has ever been released, comprising a total of 100 million media objects [i.e., photos] . . . all of which have been uploaded to Flickr between 2004 and 2014 and published under a [Creative Commons] commercial or non-commercial license."  *Id.* at 66.  The YFCC100M dataset thus

---

[2] *See* Flickr, How to Change Your License on Flickr https://www.flickrhelp.com/hc/en-us/articles/4404078674324-Change-Your-Photo-s-License-in-Flickr (last visited Dec. 6, 2021) (describing the licenses supported by Flickr).

[3] Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited Nov. 29, 2021) (describing licenses as allowing "others [to] distribute, remix, adapt, and build upon your work").

[4] Both Flickr, Inc. and Yahoo Inc. are Delaware corporations based in California.  *See State of Delaware, Department of State:  Division of Corporations, Business Search Results for Flickr Inc. and Yahoo, Inc.*, https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (last accessed Dec. 6, 2021). The Court may take judicial notice of information posted on a state government website because it is "readily verifiable and, therefore, the proper subject of judicial notice." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006).

[5] Compl. ¶ 29; Merler Decl. at Ex. A, M. Merler, *Diversity in Faces* ("IBM DiF Paper").

[6] Bart Thomee et al., "YFCC100M: The New Data in Multimedia Research," Communications of the ACM, 59(2), 2016, at 66, available at https://dl.acm.org/doi/pdf/10.1145/2812802 ("YFCC100M Paper") at 64–73.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 3
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   includes only photos that Flickr users voluntarily allowed third parties to copy, distribute, edit,

2   and use.[7]

3         **B.   The IBM-Created DiF Dataset**

4         In 2019, researchers at IBM released the IBM DiF Dataset "to help advance the study of

5   fairness and accuracy in face recognition technology."  IBM DiF Paper at 24.  To create this

6   dataset in compliance with "various copyright laws and privacy regulations," the IBM

7   researchers used only photos from the YFCC100M dataset subject to the Creative Commons

8   license.  *Id.* at 7-8.  After selecting photos, the IBM researchers applied 10 different coding

9   schemes and "annotations" from some of the photos in the dataset, including information related

10  to some of the faces in some of the linked photos, such as "craniofacial distances" and "areas and

11  ratios."  *Id.* at 9.  They also included other demographic information about some of the faces in

12  the photos, such as the estimated age and gender.  *Id.* at 9, 14–16 (describing coding schemes for

13  skin color, age prediction, and gender prediction).  The information about the faces in the photos

14  linked in the IBM DiF Dataset was "purely descriptive and designed to provide a mechanism to

15  evaluate diversity in the dataset—not to provide a method of facial identification."  Merler Decl.

16  ¶ 7.

17        The IBM researchers who created the DiF Dataset did so in New York, and IBM created

18  and stored the Dataset on servers in New York.  *Id.* at ¶ 8.  IBM did not create the DiF Dataset in

19  Illinois, did not store it on computers in Illinois, or did not otherwise take any actions involving

20  Illinois with respect to the Dataset.  *Id.*  In addition, the "IBM RESEARCH DiF DATASET

21  TERMS OF USE" prohibited recipients of the Dataset from "attempt[ing] to identify any

22  individuals within the IBM Research DiF Dataset (unless required by law and with IBM's prior

23  written consent)."  Merler Decl., Ex. H, IBM Research DiF Dataset Terms of Use at 3.  After

24  creating the IBM DiF Dataset, IBM made it available for download free of charge, to certain

25

26

27  _____
    [7] *Id.* at 66 ("Each media object included in the dataset is represented by its Flickr identifier . . . and the CC license under which it was published.").

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 4
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

researchers who requested access to the DiF Dataset and filled out a questionnaire certifying that the request for access was for research purposes only.  Merler Decl. ¶9.

### C.  Plaintiffs' Flickr Photos

Plaintiffs assert that, while in Illinois, they uploaded photos of themselves and others to their personal Flickr accounts.  Compl. ¶¶ 66, 75; Berger Decl. Ex. 1, Vance Dep. 132:4–6; *id.* Ex. 2, Janecyk Dep. 99:21–100:13.  When signing up for Flickr, Plaintiffs did not exercise the option to restrict who could access their photos, such as choosing the All Rights Reserved license.  Vance Dep. 207:17–208:4; Janecyk Dep. 72:2–24.  Instead, both chose to upload their photos under the Creative Commons license, thereby granting the public "license" to "distribute, remix, adapt, and build upon [their] work[.]"[8]  Vance Dep. 206:1–6; Janecyk Dep. 72:2–9.

Vance testified that he uploaded at least 18,595 public photos to Flickr, at least 63 of these were part of the YFCC100M Dataset and subsequently included by IBM the DiF Dataset.  Vance Dep. 179:22–23; 210:19–24.  These 63 photos depict other people, not just Vance, and Vance did not always know whether these people were Illinois residents.  *Id.* at 132:4–14; 154:5–16.  Some of these 63 photos were taken by someone other than Vance, and some were taken outside Illinois.  *Id.* at 70:2–71:22; 131:10–132:2.

Janecyk uploaded 1,669 public photos to Flickr, 24 of which were part of the YFCC100M Dataset and subsequently became part of the IBM DiF Dataset.  Janecyk Dep. 74:21–24; 95:22–96:1.  Janecyk's practice was to photograph strangers on the streets of Chicago.  *Id* at 45:16–46:19.  Aside from himself and individuals Janecyk knew only as "Popcorn Mike" and "Dave," Janecyk did not know the names of any of the people in the 24 photos and did not know where they lived.  *Id.* at 98:8–100:13; 167:11–168:15; 225:9–227:4; 228:19–21.  At least 2 of the 24 photos were taken outside of Illinois.  *Id.* at 97:18–20.  Janecyk put a note on his account saying "PLEASE STEAL MY PHOTOS! ... I encourage you to steal any of my photography for personal or commercial use."  Berger Decl. Ex. 3, Janecyk Dep. Ex. 4.  Although Janecyk testified that this

---

[8] Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited Dec. 9, 2021).

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 5
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  was "kind of a joke," he acknowledged he would allow people to use his photos from Flickr for

2  non-commercial purposes.  *Id.* at 88:14–89:6.

3  Neither Vance nor Janecyk alleges he had any contact or communication with Microsoft

4  (in Illinois or elsewhere) concerning the IBM DiF Dataset or their photos on Flickr.  Vance Dep.

5  187:9–19; 199:13–16; Janecyk Dep. 95:3–6.  Neither Plaintiff contacted IBM about removing their

6  photos from the Dataset upon learning they were in it.  *Id.*

7  **D.   Microsoft Contractor Benjamin Skrainka's Download of the IBM DiF Dataset**

8  In early 2019, Benjamin Skrainka was an independent contractor working for Neal

9  Analytics LLC, a Washington-based consulting firm that supports companies with their data-

10  driven initiatives.  Skrainka Decl. ¶ 2.  Through Neal Analytics, Skrainka worked as a vendor to

11  Microsoft from September 7, 2018, through August 1, 2019.  *Id.*  In that role, Skrainka provided

12  support for a project where he applied industry standard benchmarks to evaluate facial

13  recognition technology.  *Id.* at ¶ 3.  He determined what the parameters and/or methodology

14  should be for comparing different face recognition technologies available in the market.  *Id.*;

15  Kasap Decl. ¶ 4.

16  As part of this research project, Skrainka sought datasets containing photos that might be

17  suitable for his project.  Skrainka Decl. ¶ 4.  On or around February 1, 2019, Skrainka, while

18  working in Washington, filled out an IBM questionnaire and requested a copy of the IBM DiF

19  Dataset for use in the project.  *Id.* at ¶¶ 4–5.  After IBM granted Skrainka access to its Dataset

20  through an online link, he downloaded the IBM DiF Dataset sometime in early February 2019.

21  *Id.* at ¶ 5.  He was in Washington when he downloaded the IBM DiF Dataset.  *Id.*

22  Skrainka obtained the IBM DiF Dataset to evaluate whether the photos linked in the

23  dataset were suitable for use in his project.  *Id.* at ¶ 6.  He was not interested in any facial

24  annotations or any other data that IBM may have included in its DiF Dataset, and he never

25  reviewed any such data.  *Id.*

26

27

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 6
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The linked photos in the Dataset were not useful for Skrainka's research purposes because they were unconstrained images, i.e., they were not conventional head-on photos used on a driver's license or passport, and they were of generally low quality. *Id.* at ¶ 7.  Once Skrainka determined the photos were not useful, he spent no further time with the IBM DiF Dataset. *Id.*

He did not share the link or the IBM DiF Dataset with anyone. *Id.* at ¶ 5.  Because he was focused on locating suitable photos, Skrainka ignored—and was not even aware of—any other data IBM may have included in the DiF; nor did he know the IBM DiF Dataset included data relating to some Illinois residents. *Id.* at ¶¶ 6, 10.  Neither Skrainka nor Mustafa Kasap, the Microsoft Principal Program Manager supervising Skrainka's work for Azure Media Services, are aware of anyone at Microsoft using or accessing the IBM DiF Dataset in any project or product at Microsoft, other than Skrainka's brief evaluation of some of the photos in and rejection of the Dataset. *Id.* at ¶ 12; Kasap Decl. ¶ 7.

Skrainka does not recall where he saved his copy of the IBM DiF Dataset.  Skrainka Decl. ¶ 8.  Despite a reasonable investigation, Microsoft too has been unable to confirm if and where Skrainka stored his downloaded copy of the IBM DiF Dataset.  *See* Kasap Decl. ¶ 6; Bruncke Decl. ¶¶ 5–6.  Skrainka used his own Apple laptop for his work—not any Microsoft-issued device for his work related to the IBM DiF Dataset.  Skrainka Decl. ¶ 9.  When this project ended in approximately August 2019, Skrainka decommissioned all the virtual machines[9] he used on the project and deleted from his own computer all resources he used during the project, including any datasets.  *Id.* ¶¶ 8–9.

Andy Bruncke, a Senior Program Manager at Microsoft who oversaw the vendor relationship with Neal Analytics, searched for any record of Skrainka's downloaded copy of the IBM DiF Dataset in the locations where vendors and Microsoft employees stored data for the

---

[9] A virtual machine emulates the characteristics of a stand-alone physical computer.  Skrainka Decl. ¶ 8.  It shares physical resources, such as servers, with other virtual machines, and each virtual machine is isolated by software. *Id.* A virtual machine can easily be created, modified, or decommissioned without affecting the host computer.  *Id.*

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 7
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   relevant research project.  Bruncke Decl. ¶ 6.  Bruncke did not locate either a copy of the IBM

2   DiF Dataset or a record of it ever having been stored in those locations.  *Id.* at ¶ 6.

3         **E.**    **Microsoft Student Intern Samira Samadi's Download of the IBM DiF Dataset**

4        In February 2019, Samira Samadi, a graduate student at Georgia Institute of Technology

5   in Atlanta, Georgia, worked as a student intern at Microsoft Research's New York office.

6   Samadi Decl. ¶ 2.  Samadi downloaded the IBM DiF Dataset for a research project overseen by

7   Jenn Wortman Vaughan, a Microsoft Senior Principal Researcher.  Samadi Decl. ¶¶ 5-6;

8   Vaughan Decl. ¶ 5.  Samadi's internship research project involved the study of how humans

9   interact with, use, and make decisions with facial recognition systems.  Samadi Decl. ¶ 3.  She

10  wanted to design a controlled human-subject experiment where participants were shown

11  examples of images of faces deemed similar by an automatic facial recognition system and then

12  were asked to judge the similarities of the faces in the images.  *Id.*  The goal of Samadi's

13  research was to measure how the perceived race, skin tone, and gender of the faces affect human

14  judgment of face similarities.  *Id.*

15       After reading about the IBM DiF Dataset, Samadi thought it might be a useful resource,

16  as the photos linked in the IBM DiF Dataset apparently had been selected to represent a diverse

17  demographic cross-section.  *Id.* at ¶ 5.  From New York, and using her Georgia Institute of

18  Technology email address, Samadi emailed IBM on February 25, 2019, requesting access to the

19  IBM DiF Dataset on or about February 20, 2019.  *Id.*  IBM provided a questionnaire and after

20  she filled that out, she was granted access to the IBM DiF Dataset via an online link.  Samadi

21  Decl. ¶ 6.  Samadi downloaded the IBM DiF Dataset from IBM on or about February 25, 2019,

22  in New York City.  *Id.*

23       After she did so, she briefly reviewed some of the photos linked in the Dataset and

24  quickly determined they were unsuitable for her research project.  *Id.* at ¶ 7.  The photos in the

25  Dataset did not contain multiple photos of the same individual facing the camera, which was

26  necessary to simulate the hypothetical facial recognition system her research required.  *Id.*  Once

27

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 8
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Samadi made that determination, she stopped reviewing the IBM DiF Dataset.  *Id*.  She did not review any annotations or data in the Dataset.  *Id.* at ¶ 8.  Neither Samadi nor her supervisor Vaughan used the IBM DiF Dataset in their research projects.  *Id.* at ¶ 7; Vaughan Decl. ¶ 10.

Samadi did not share the link or the IBM DiF Dataset with anyone else.  Samadi Decl.  ¶ 8.  When she downloaded it, she did not even know that the IBM DiF Dataset included any facial measurements or other similar data added by IBM; nor did she know the IBM DiF Dataset included data relating to Illinois residents.  *Id*.

Samadi does not recall where she saved the copy of the IBM DiF Dataset that she downloaded, but she believes she saved it on her Microsoft-issued laptop.  *Id.* ¶ 6.  Based on Microsoft's Data Retention and Disposal Standard, Microsoft would no longer have had access to any of Samadi's data on her Microsoft-issued laptop within 180 days of the end of her internship (by October 30, 2019).  *See* Swann Decl. ¶ 9.  Microsoft found a copy of the IBM DiF Dataset that Samadi downloaded, along with other data from Samadi's internship, on a Microsoft Research local server in New York.  *See* Chirico Decl. ¶ 3 & Ex. B.  The server is physically located in New York.  *Id.* at ¶ 3.  There are no servers hosting backups of the New York server, and access to the New York server is restricted to Microsoft Research.  *Id.*  The IBM DiF Dataset was saved in a "hidden share," meaning that even a Microsoft Research team member could access it only if they knew the specific file path.  *Id.*

Microsoft has not found any evidence to suggest the copy of the IBM DiF Dataset that Samadi downloaded was ever downloaded to or stored on any Microsoft storage devices or equipment, including servers, other than the local New York server physically located in New York.  Neither Samadi nor Vaughan is aware of anyone at Microsoft using or accessing the IBM DiF Dataset in any project or product at Microsoft, other than Samadi's brief evaluation of some of the photos in and rejection of the Dataset.  Samadi Decl. ¶ 12; Vaughan Decl. ¶ 11.

Based on these facts, Plaintiffs seek money damages on their BIPA Section 15(b) and unjust enrichment claims.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 9
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# ARGUMENT

The Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  To avoid summary judgment, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original); *see also Hesketh v. Total Renal Care, Inc.*, 2021 WL 5761610, at *7 (W.D. Wash. Dec. 3, 2021) (Robart, J.).  Here, because Microsoft "does not bear the ultimate burden of persuasion at trial," it is entitled to summary judgment "by showing that the nonmoving party lacks evidence of an essential element of its claim[.]" *Hesketh*, 2021 WL 5761610, at *7.  The Court should grant summary judgment on Plaintiffs' remaining claims because the undisputed material facts confirm Microsoft did not engage in any relevant conduct in Illinois and did not do anything with the IBM DiF Dataset—defeating Plaintiffs' BIPA Section 15(b) and unjust enrichment claims.

## I.     Illinois' BIPA Statute Does Not—and Cannot Constitutionally—Apply to Microsoft's Out-of-State Activities.

The two people associated with Microsoft who briefly interacted with some of the photos in the DiF Dataset in Washington and New York did not know it might have contained links to photos or data of Illinois residents, nor did they use the Dataset for any purpose.  Plaintiffs nevertheless assert that Microsoft should be subject to BIPA's statutory damages for briefly reviewing some photos in the DiF Dataset—from outside Illinois.  Such an interpretation would lead to absurd consequences, imposing statutory damages on private entities who lack *any* connection to Illinois for unknowingly coming into possession of data allegedly about Illinois residents, but never using it.  Nothing in BIPA suggests the statute was intended to have extraterritorial effect.  To the contrary, the Illinois General Assembly's legislative findings show it was concerned with companies coming *into* Illinois and collecting Illinois residents'

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 10
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

biometrics.[10]  As a matter of Illinois state law, BIPA does not apply to Microsoft's out-of-state

conduct.  And any such application would violate the dormant Commerce Clause.

> **A.      BIPA Does Not Apply Extraterritorially and Microsoft Did Not Engage in Conduct "Primarily and Substantially" in Illinois.**

As this Court previously acknowledged, under Illinois law, BIPA "is not authorized to

have extraterritorial effect."  Dkt. 43 at 6.  To establish a BIPA claim against Microsoft,

Plaintiffs must prove it violated the statute and that these violations "occur[red] primarily *and*

substantially in Illinois."  *Id.* (quoting *Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E.2d

801, 852 (Ill. 2005) (emphasis added).  Put another way, Microsoft could be subject to BIPA

only if "the majority of circumstances relating to the alleged violation of the [statute]" occurred

in Illinois.  *Landau v. CNA Fin. Corp.,* 886 N.E.2d 405, 409 (Ill. App. 2008).[11]

Another district court recently dismissed a BIPA putative class action because, like here,

a plaintiff sought to improperly apply the statute to conduct that did not apply "primarily and

substantially" in Illinois.  *See McGoveran v. Amazon Web Services, Inc.*, 2021 WL 4502089, at

*6 (D. Del. Sept. 30, 2021).  This Court should do so here, too.

> **1.      The Undisputed Facts Confirm Microsoft's Conduct Occurred Entirely Outside Illinois**

Here, Plaintiffs claim Microsoft violated Section 15(b) of BIPA because it allegedly

obtained their biometrics without first receiving their written consent or telling them the purpose

and duration of Microsoft's collection.  The relevant conduct underlying Plaintiffs' BIPA claim

involves a Microsoft contractor in Washington and a Microsoft student intern in New York.

These two individuals each downloaded the IBM DiF Dataset, briefly evaluated some of the

---

[10] The General Assembly found that "[m]ajor national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger scan technologies at grocery stores, gas stations, and school cafeterias."  740 ILCS 14/5(b).

[11] Illinois courts "do not favor any [statutory] construction that would raise legitimate doubts as to the constitutional validity of a statutory provision."  *People v. Scheib*, 390 N.E.2d 872, 876 (Ill. 1979); *accord Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019).  Extraterritorial application of BIPA here would violate the dormant Commerce Clause, rendering BIPA unconstitutional as applied here.  *See infra* at pp. 17-21.  If the Court agrees with Microsoft and holds BIPA does not apply extraterritorially, the Court need not wade into whether BIPA's application here raises doubts about the statute's constitutional validity.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 11
(Case No. 2:20-cv-01082-JLR)

photos linked in the Dataset, and then rejected the Dataset for use in research projects in Washington and New York.  Skrainka Decl. ¶ 7; Samadi Decl. ¶ 7.  Neither the contractor nor the intern used the DiF Dataset in any way; neither shared the Dataset with anyone else; and neither is aware of anyone else at Microsoft using the Dataset.  Skrainka Decl. ¶¶ 7, 12; Samadi Decl. ¶¶ 7, 8, 12.  As this Court emphasized in its order on Microsoft's Motion to Dismiss, the only question is "whether and to what extent Microsoft's alleged acts involving the Diversity in Faces dataset occurred in Illinois."  Dkt. 43 at 10.  The undisputed facts answer that question: not at all.

Far from showing any connection to Illinois, the evidence shows that Microsoft's conduct regarding the IBM DiF Dataset was several steps *removed* from Illinois.  The IBM DiF Dataset, which allegedly generated facial annotations from publicly available photos taken and uploaded from around the world, was created by IBM in New York.  Merler Decl. ¶ 8.  IBM used the YFCC100M dataset created by Yahoo! and Flickr, which are both Delaware corporations headquartered in California.  Skrainka and Samadi each downloaded and briefly evaluated some of the photos linked in the IBM DiF Dataset while located in Washington and New York, respectively.  Skrainka Decl.  ¶¶ 5, 7; Samadi Decl. ¶ 7.  And that is all either did.

Skrainka did not use a Microsoft-issued laptop for his project, does not recall where he saved his copy of the IBM DiF Dataset, and when his project ended in about June 2019, he deleted all resources he used in the project, including any stored data.  *Id.* ¶¶ 8-9.  And the copy of the IBM DiF Dataset downloaded by Samadi was stored on a Microsoft Research local server physically located in New York and not backed up anywhere else.  Chirico Decl. ¶ 3

During their work at Microsoft, Skrainka and Samadi both had access to Microsoft's cloud storage option, OneDrive for Business.  Swann Decl. ¶ 4.  OneDrive is Microsoft's cloud file hosting and storage service.  *Id.*  Microsoft, like thousands of businesses, has a OneDrive for Business subscription, which allows its employees and vendors to store their files and data in the cloud.  *Id.*  Microsoft has no reason to believe Skrainka and Samadi ever stored a copy of the IBM DiF Dataset to OneDrive or Azure Blob Storage.  *Id.* at ¶ 5.  If, hypothetically, Skrainka or

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 12
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   Samadi *had* saved a copy of the IBM DiF Dataset file (or portions of it) to OneDrive, the file

2   would have been chunked (i.e., divided into non-overlapping packets of data bits, roughly one

3   megabyte in size) and encrypted.  *Id.* at ¶ 4.  The encrypted chunks would have then been stored

4   in data centers, likely in San Antonio, Texas, and Chicago, Illinois.  *Id.*

5        But Microsoft has no reason to believe this hypothetical ever actually occurred, and there

6   is no evidence it did.  *Id.* at ¶ 5.  Plaintiffs may not rely on hypotheticals to resist summary

7   judgment.  *See, e.g., Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003)

8   ("unsupported conjecture" is insufficient to defeat summary judgment).  In any event, even if

9   fragments of the DiF Dataset had been stored in Illinois at some point (which Microsoft does not

10  concede), that would have nothing to do with the alleged BIPA violation:  Section 15(b)

11  regulates only the *acquisition* of data through conduct primarily and substantially in Illinois, not

12  the encrypted *storage* of fragmented data after acquisition.  *See* 740 ILCS 14/15(b) (party may

13  not "collect, capture, purchase, receive through trade, or otherwise obtain" biometrics without

14  notice and consent).

15       The totality of Microsoft's conduct related to the alleged BIPA violation occurred

16  entirely outside of Illinois.  The evidence confirms the scenario this Court recognized in ruling

17  on Microsoft's Motion to Dismiss, i.e., "[i]t is certainly possible with more factual refinement

18  around this complex issue, the circumstances around Microsoft's attainment, possession and use

19  of the Diversity in Faces dataset will reveal that the alleged violations did not occur primarily in

20  Illinois."  Dkt. 43 at 8.

21             **2.      Microsoft's Alleged BIPA Violation Had No Connection to Illinois.**

22       Plaintiffs allege they uploaded photos to Flickr while residing in Illinois many years

23  before IBM created its DiF Dataset—but *the uploading of the photos is not when Microsoft*

24  *allegedly violated Section 15(b)*.  For one thing, as this Court recognized, BIPA expressly

25

26

27

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 13
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

exempts "photographs" from its definition of "biometric identifier."[12]  Dkt. 43 at 12 (quoting 740 ILCS 14/10).  Microsoft allegedly violated BIPA not when Plaintiffs uploaded their photos, but several years later, when Skrainka and Samadi downloaded IBM's DiF Dataset (created in New York) from Washington and New York, which allegedly contained annotations of Plaintiffs' faces.  As the Court recognized, the relevant inquiry on Plaintiffs' BIPA claim is "whether and to what extent Microsoft's alleged acts involving the Diversity in Faces dataset occurred in Illinois."  Dkt. 43 at 10.  But again, the evidence shows Microsoft's conduct did not occur in Illinois at all.

In analyzing the Motion to Dismiss on extraterritoriality, this Court noted that if Microsoft had made disclosures to or sought consent from Illinois residents, "any communication would have necessarily involved Illinois."  Dkt. 43 at 8.  But Microsoft did *not* communicate with Illinois residents (or residents of other states) whose photos were linked in the IBM DiF Dataset.  Indeed, the two people associated with Microsoft who downloaded the IBM DiF Dataset were not even aware it may contain links to photos or annotations from Illinois residents.  Skrainka Decl. ¶ 10; Samadi Decl. ¶ 9.  The absence of any communications with Illinois residents confirms that the circumstances giving rise to Plaintiffs' claims did not occur primarily and substantially in Illinois.  To hold otherwise would make BIPA apply to anyone who obtains an Illinois resident's data, even unwittingly, without regard to where the defendant resides or conducted the activities giving rise to the claim.  Further, the *absence* of communications in Illinois cannot bring otherwise extraterritorial conduct within BIPA's reach. The *absence* of conduct simply cannot be conduct occurring "primarily and substantially" in Illinois.

In *McGoveran v. Amazon Web Services, Inc.*, the court made this very point in granting the defendants' motion to dismiss in a BIPA case because the plaintiff sought to apply the statute

---

[12] Plaintiffs do not and cannot allege any wrongdoing based on Microsoft obtaining their *photographs* for yet another reason.  By uploading photographs to Flickr pursuant to the Creative Commons license, Plaintiffs licensed anyone to use their photographs to copy, distribute, and make derivative works from their photographs.  Creative Commons, About The Licenses, https://creative commons.org/licenses/.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 14
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

extraterritorially.  *See* 2021 WL 4502089, at *6.  There, the plaintiffs argued that the defendants

"failed to make written biometric data retention and destruction policies available to the public

and that they failed to provide notice to and obtain consent from Illinois citizens."  *Id.* at *4.  But

the court rejected the notion that a location could be assigned for the defendants' alleged failure

to act:

> The Court does not see why that must be true (*See* Tr. at 10) ("It really makes no
> sense to assign a location for an act that did not occur.")  More fundamentally, that
> argument depends on the assumption that Defendants were required to provide
> notice, publish policies, and obtain consent in Illinois. . . . Plaintiffs have not alleged
> any activity in Illinois that would impose such obligations on Defendants.

*Id.  See David K. Lindemuth Co. v. Shannon Fin. Corp.*, 637 F. Supp. 991, 994 (N.D. Cal. 1986)

("[t]here is no 'place' where [an] omission occur[s]").

What's more, the uncontroverted evidence demonstrates no harm to Plaintiffs and

certainly no "ongoing" "harm to privacy interests . . . for Illinois residents."  Dkt. 43 at 8.  Two

people briefly affiliated with Microsoft briefly looked at some of the photos linked in the IBM

DiF Dataset (but none of the data or annotations), quickly determined the Dataset was unsuitable

for their research, and did not use or share the Dataset with anyone else at Microsoft.  And the

evidence shows no one else at Microsoft used the IBM DiF Dataset either.  Kasap Decl. ¶¶ 7-8;

Bruncke Decl. ¶ 7; Vaughan Decl. ¶ 11; Samadi Decl. ¶ 12; Skrainka Decl. ¶ 12.  The evidence

establishes no harm to Illinois residents, much less ongoing harm, by Microsoft's download and

brief review of some of the photos contained in the Dataset.

In short, the information that Plaintiffs allege was protected by BIPA was created by IBM

in New York, not Illinois, several years after Plaintiffs uploaded the photos from which their

alleged biometrics were derived.  Microsoft's alleged conduct with respect to the IBM DiF

Dataset containing that information occurred in Washington and New York, not Illinois.

Because BIPA has no extraterritorial effect and Microsoft's conduct occurred entirely outside

Illinois, BIPA does not apply to Microsoft here and the Court should grant summary judgment.

### 3.    Plaintiffs' Illinois Residency Alone Cannot Satisfy Illinois' Extraterritoriality Doctrine.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 15
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The only connection between Plaintiffs' BIPA claim and Illinois is that Plaintiffs are Illinois residents, who assert they uploaded photos to Flickr while allegedly located in Illinois. Compl. ¶¶ 6-7, 66-67, 75.  That does not suffice.  Plaintiffs' residence alone cannot satisfy Illinois' requirement that *Microsoft's* alleged violation of BIPA must have occurred primarily and substantially in Illinois.  *See, e.g., Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (no substantial connection though plaintiff was an Illinois business); *Vulcan Golf, LLC v. Google Inc.,* 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing case when only contact was plaintiffs' Illinois residency).

In *McGoveran*, the court refused a similar attempt to apply BIPA extraterritorially based solely on the plaintiffs' Illinois residence.  *See McGoveran,* 2021 WL 4502089, at *6.  There, plaintiffs alleged that when they called a call center located in Massachusetts, one defendant, who was based in Georgia and provided voice technology to the company that operated the call center "extracted biometric information from calls originating from Illinois, from Illinois citizens, and from clearly recognizable Illinois phone numbers," and one defendant, who was based in Washington "intercepted biometric information" from Illinois callers.  *Id.* at *4.  The plaintiffs argued BIPA applied to this conduct because they were in Illinois when they called Massachusetts.  *Id.* According to them, "under BIPA, as long as the source of the biometric data is Illinois, that's enough to establish liability."  *Id.* at *6.

The district court flatly rejected this argument.  "There is no basis in the statutory language to find that BIPA stretches so far."  *Id.*   The court held "[t]he location of the caller does not . . . say anything about the location where the rest of the conduct occurred," and there was no indication in the complaint that the non-Illinois defendants "did anything in Illinois."  *Id.* at *4.  Because the defendants did not do "anything" in Illinois, it followed that any BIPA violations did not occur "primarily and substantially" in Illinois.  *Id.* at *6.  The court distinguished decisions denying motions to dismiss in *Rivera v. Google*, 238 F.Supp.3d 1088 (N.D. Ill. 2017), and *Monroy v. Shutterfly*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), noting

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 16
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

that in both those cases the defendants were alleged to have directly and intentionally interacted with the plaintiffs in Illinois.  *Id.* at *11.[13]

This case is analogous to *McGoveran.*  Microsoft had no interaction with Plaintiffs, and Microsoft's conduct cannot be fairly attributed to Illinois.  Nothing happened in Illinois other than Plaintiffs allegedly uploading their photos to Flickr in Illinois, years before IBM created its DiF Dataset in New York.  Vance Dep. 187:9–19; 199:13–16; Janecyk Dep. 95:3–6.  That is the *only* conceivable connection between Plaintiffs' claims and Illinois.[14]  Plaintiffs ask the Court to adopt the very rule for which the *McGoveran* court found "no basis":  that a plaintiff's location in Illinois is enough to implicate BIPA even when the conduct forming the alleged BIPA violation occurred entirely outside Illinois.  And as the court rightly acknowledged, that outcome makes no sense, as it would mean "BIPA could impose liability on a vast number of corporations who do no business in Illinois and who lack any other significant connection to Illinois." *McGoveran*, 2021 WL 4502089, at *6.  Nothing in the Illinois legislative history or findings for BIPA suggests the legislature intended for BIPA to have such sweeping effect.  The Court should follow *McGoveran* and reject Plaintiffs' argument.

**B.     Applying BIPA to Microsoft's Out-of-State Conduct Here Would Violate the Dormant Commerce Clause.**

Even if Illinois law permitted BIPA to apply extraterritorially to Microsoft here (and it does not), the dormant Commerce Clause would prohibit such an application.  The Commerce Clause of the U.S. Constitution, Article I, section 8, has long been understood to have a negative implication "commonly known as the dormant Commerce Clause." *Daniels Sharpsmart, Inc. v.*

---

[13] To Microsoft's knowledge, decisions regarding extraterritoriality in BIPA cases have all been at the motion to dismiss stage, rather than assessed on summary judgment.

[14] In *McGoveran*, the court acknowledge that the Washington-based company's data centers "are located wholly outside Illinois – in Virginia, Ohio, California, and Oregon – and Plaintiffs do not allege otherwise." *McGoveran*, 2021 WL 4502089, at *4.  Although Microsoft does have an Illinois data center, there is no evidence the IBM DiF Dataset was ever stored there, *see supra*, pp. 12-13, and unlike in *McGoveran*, this case is presented on summary judgment, where plaintiffs have the burden of presenting evidence on their claims.  In any event, as explained above, the hypothetically transitory storage of encrypted chunks of data cannot give rise to liability under Section 15(b) of BIPA.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 17
(Case No. 2:20-cv-01082-JLR)

*Smith*, 889 F.3d 608, 614 (9th Cir. 2018).  The dormant Commerce Clause prohibits a state from "directly affect[ing] transactions that take place across state lines or entirely outside of the state's borders."  *Id.* at 614–15 (9th Cir. 2018) (quoting *S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001)).  If a state statute directly regulates conduct "entirely outside of the state's borders," the statute is "struck down . . .  without further inquiry." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (citation omitted).  In addition, the dormant Commerce Clause also prevents "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."  *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 337 (1989) (citation omitted).   This case presents both dormant Commerce Clause scenarios, although each is independently sufficient. *Id.* at 336–37 (the Commerce Clause protects both against inconsistent legislation "generally" or against one State "specifically … forc[ing] an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another.").

### 1.  Plaintiffs May Not Use BIPA to Regulate Conduct Occurring Entirely Outside of Illinois' Borders.

"Congress's power to regulate articles or goods in commerce may not permit it to regulate an item for eternity simply because it has once passed state lines." *United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir. 1995), *abrogated on other grounds by Jones v. United States,* 529 U.S. 848, 854 (2000).  So, too, Illinois may not regulate a photo (or information derived from a photo) anywhere in the world simply because it was taken in Illinois or contains information about an Illinois resident.  For example, in *Daniels Sharpsmart*, the Ninth Circuit held a party would likely succeed on its claim that California violated the dormant Commerce Clause when it attempted to regulate how medical waste arising in California could be disposed of elsewhere.  889 F.3d at 616.  Similarly, the Ninth Circuit has held California may not regulate "sales that take place outside California" merely because the seller resides in California.  *See Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015).

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 18
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

As in these cases, Illinois may not regulate conduct involving biometric data that takes place entirely outside Illinois.  *See id.*  "One state cannot be permitted to dictate what other states must do within their own borders."  *Daniels Sharpsmart*, 889 F.3d at 615.  Illinois cannot dictate what Microsoft may do with biometric information lawfully obtained within Washington or New York.  Yet that is precisely the outcome Plaintiffs demand here.  The Court should reject Plaintiffs' invitation to apply BIPA in an unconstitutional manner and should hold BIPA's application here violates the dormant Commerce Clause.

> ### 2.     BIPA's Application Here Would Conflict with Washington and New York Biometric Privacy Law.

Applying BIPA on the undisputed facts would violate the dormant Commerce Clause for yet another reason:  it would conflict with the policy decisions of Washington and New York concerning conduct involving biometric data in those states.

Washington has enacted its own Biometric Privacy Law.  Unlike Illinois, Washington has expressly exempted "data generated" from "a physical or digital photo" from its protections.  RCW 19.375.010(1).  Washington has also chosen to extend privacy protections only to the use and collection of biometric information for "commercial purposes."  RCW 19.375.020(1).  Because Skrainka and Samadi each downloaded the IBM DiF Dataset for research purposes, the "commercial purposes" limitation in the Washington law would exclude Microsoft's download of the DiF Dataset.[15]  Unlike Illinois, Washington requires notice and consent only to "enroll" biometric information in a database, which involves  "captur[ing] a biometric identifier of an individual, convert[ing] it into a reference template that cannot be reconstructed into the original output image, and stor[ing] it in a database that matches the biometric identifier to a specific individual.  RCW 19.375.020; RCW 19.375.101(5).  Plaintiffs do not allege Microsoft engaged in any such "enrollment" activity.  Rather, they hinge their liability theory on Microsoft

---

[15] "Commercial purpose" means "in furtherance of the sale or disclosure to a third party of a biometric identifier for the purpose of marketing of goods or services when such goods or services are unrelated to the initial transaction in which a person first gains possession of an individual's biometric identifier."  RCW 19.375.010(4).  In other words, Washington's biometric privacy statute applies only to the sale or disclosure of biometric information itself.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 19
(Case No. 2:20-cv-01082-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

downloading a dataset in which IBM included data generated from some of the photos—conduct the Washington law would, again, exclude. Microsoft fully complied with Washington law, the jurisdiction where Skrainka interacted with the IBM DiF Dataset. The Court should not allow Plaintiffs to import Illinois' policy decisions into Washington to find a violation where Washington law would deem there was none.

Similarly, New York, after several years of discussion within its Legislature, has chosen not to regulate the use of biometric information, leaving biometric information freely available for use by companies and researchers. New York City recently (effective July 9, 2021) passed a biometric privacy law, to apply only to a "commercial establishment"—defined to mean "a place of entertainment, a retail store, or a food and drink establishment," New York City Code § 22-1201—that "collects, retains, converts, stores or shares biometric identifier information of customers," and allows the free transfer of biometric information, although it cannot be sold. New York City Code § 22-1202. Plaintiffs cannot argue that IBM's (or Microsoft's) conduct would have violated New York City's biometric privacy law, even if the law had been in effect when Samadi downloaded the DiF Dataset in 2019.

Applying BIPA to Microsoft's wholly out-of-state conduct here would effectively allow Illinois to make policy and legislative decisions for Washington and New York, substituting its views for the different biometric privacy policy decisions of these other states. It is no answer to suggest that Microsoft could comply with the stricter law. In that event, Illinois would still be overruling other states' chosen biometric policies, including (a) Washington's decision to allow use of all biometric information for non-commercial purposes and to allow biometric data derived from photos for any purposes, and (b) New York's decision not to regulate at all. *Cf. Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 640 (9th Cir. 1993) (rejecting a "comply with the most stringent" argument); *see also Mazza v. Am. Honda Co., Inc.*, 666 F.3d 581, 592 (9th Cir. 2012) (recognizing that states may choose to leave some conduct unregulated in "balancing the competing interests" between promoting business and protecting consumers).

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 20
(Case No. 2:20-cv-01082-JLR)

The Court denied Microsoft's dormant Commerce Clause arguments at the motion to dismiss stage, explaining it "need[ed] more information about the technology behind how Microsoft obtained, stores, or uses the Diversity in Faces dataset[.]"  Dkt. 43 at 11.  The Court now has that information.  As discussed above, Microsoft obtained the IBM DiF Dataset when Skrainka, in Washington, and Samadi, in New York, each downloaded it from IBM servers in New York, solely to evaluate the possible use of photos linked in the Dataset for research purposes.  Neither had any interest in the annotations IBM recorded in the Dataset.  Skrainka Decl. ¶¶ 5-6; Samadi Decl. ¶ 6-8; Vaughan Decl. ¶ 6.  Nothing is complex about the technology—the download simply operated in the way that any download from an online link might.  Merler Decl. ¶ 10.   Microsoft did not use the Dataset at all.  Samadi Decl. ¶¶ 7, 12; Skrainka Decl. ¶¶ 7, 12; Kasap Decl. ¶¶ 7-8; Vaughan Decl. ¶¶ 7,10.  Skrainka and Samadi examined some of the photos in the DiF Dataset briefly but found them useless and abandoned the DiF Dataset altogether.  They did nothing with the DiF Dataset at all—they did not use it to improve or modify any Microsoft product, and did not incorporate it into any such product, nor did anyone else.   Kasap Decl. ¶ 7; Bruncke Decl. ¶ 7; Vaughan Decl. ¶¶ 7, 10; Samadi Decl. ¶¶ 7, 12; Skrainka Decl. ¶¶ 7, 12.

None of Microsoft's relevant conduct occurred in Illinois, and the Court should hold the dormant Commerce Clause bars BIPA from applying to Microsoft on these facts.

## II.     The Court Should Grant Summary Judgment on the Unjust Enrichment Claim.

Plaintiffs allege Microsoft obtained a "monetary benefit" from them to their detriment, and that Microsoft did so by "profiting off of Plaintiffs' … biometric identifiers and information."  Compl. ¶ 108.  But the undisputed evidence establishes that Microsoft did nothing with the DiF Dataset at all.  It therefore did not and could not possibly have obtained any "monetary benefit" or "profit" from Plaintiffs' biometric identifiers or information.  The Court should grant summary judgment dismissing this claim.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 21
(Case No. 2:20-cv-01082-JLR)

In denying Microsoft's Motion to Dismiss, this Court held that Illinois law governed Plaintiffs' unjust enrichment claim because Plaintiffs allegedly uploaded their photos in Illinois. Dkt. 47 at 16 ("uploaded Illinois-created content in Illinois"); *id.* ("Plaintiffs providing images of their faces—albeit unknowingly—that ultimately improved Microsoft's products"); *id.* ("the benefiting act (the sharing of facial images) was done [in Illinois]").

Under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145 (Ill. 1989)).[16]

Although Plaintiffs alleged that Microsoft benefited because it used the IBM DiF Dataset to "improve its facial recognition products," Compl. ¶ 58, the undisputed evidence demonstrates that this allegation has no basis in the facts.  As described in detail above, Microsoft did not use or benefit from the IBM DiF Dataset, much less "profit" from it.  Skrainka and Samadi each reviewed some of photos linked in the IBM DiF Dataset briefly, but neither they nor anyone else at Microsoft made any use of the Dataset for any purpose—much less of the annotations within the Dataset that Plaintiffs claim are biometrics.  Samadi Decl. ¶¶ 7, 12; Skrainka Decl. ¶¶ 7, 12; Kasap Decl. ¶¶ 7-8; Vaughan Decl. ¶¶ 7,10.  Microsoft obtained no "benefit" from downloading the IBM DiF Dataset.  As a result, Plaintiffs cannot prove Microsoft was unjustly enriched under

---

[16] In its Motion to Dismiss, Microsoft argued that Washington law should apply under a choice of law analysis. Under Washington law, Plaintiffs must show "(1) [Microsoft] received a benefit, (2) at [Plaintiffs'] expense, and (3) the circumstances make it unjust for [Microsoft] to retain the benefit without payment." *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (citing *Young v. Young*, 164 Wn.2d 477, 484(2008)).  For the reasons Plaintiffs' unjust enrichment claim fails under Illinois law, it fails under Washington law.  Microsoft received no benefit from downloading, reviewing some of the photos in the Dataset, and rejecting the Dataset altogether.  Similarly, to the extent New York law applies because Samadi downloaded the IBM DiF Dataset in New York, Plaintiffs' unjust enrichment claim also fails under New York law.  Plaintiffs do not suggest Microsoft, "though guilty of no wrongdoing, has received money to which [it] is not entitled." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 22
(Case No. 2:20-cv-01082-JLR)

1   Illinois law.[17]  The Court should grant summary judgment in Microsoft's favor on Plaintiffs'

2   unjust enrichment claim.

3                                          **CONCLUSION**

4          For the foregoing reasons, Microsoft respectfully requests that the Court grant summary

5   judgment on Plaintiffs' two remaining claims.

6

7          DATED this 10th day of December, 2021.

8

9

10                                                  DAVIS WRIGHT TREMAINE LLP
                                                    Attorneys for Defendant Microsoft Corporation

11

12                                                  By /s/ Stephen M. Rummage
                                                        Stephen M. Rummage, WSBA #11168
13                                                      Xiang Li, WSBA #52306
                                                        920 Fifth Avenue, Suite 3300
14                                                      Seattle, WA  98104-1610
                                                        Telephone: (206) 757-8136
15                                                      Fax: (206) 757-7136
                                                        E-mail: steverummage@dwt.com
16                                                                  xiangli@dwt.com

17                                                  MORGAN LEWIS & BOCKIUS
                                                    Attorneys for Defendant Microsoft Corporation

18

19                                                  By /s/ Elizabeth B. Herrington
                                                        Elizabeth B. Herrington (*pro hac vice*)
20                                                      Alex D. Berger (*pro hac vice*)
                                                        110 North Wacker Drive, Suite 2800
21                                                      Chicago, IL 60606-1511
                                                        Telephone: (312) 324-1000
22                                                      E-mail:  beth.herrington@morganlewis.com
                                                                  alex.berger@morganlewis.com

23

24

25

26   _____

27   [17] As Microsoft explains in its opposition to Plaintiffs' motion for class certification, the Court's choice-of-laws
     analysis as to these two plaintiffs would need to be replicated for every individual absent class member.  If the Court
     grants Microsoft's motion for summary judgment, it need not wade into these Rule 23 issues.

MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT - 23
(Case No. 2:20-cv-01082-JLR)